[No. A074457. First Dist., Div. One. Aug. 11, 1997.]

SACHIKO GENGER, Petitioner and Appellant, v.
ROBERT DELSOL et al., Objectors and Respondents.

COUNSEL

Levy, Samrick, Verby & O'Donnell, Phillip R. Samrick and Patrick O'Donnell for Petitioner and Appellant.

Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, Richard D. Maltzman, Richard J. Collier and Thomas Bruen for Objectors and Respondents.

OPINION

DOSSEE, J.—This appeal requires us to determine whether a no contest clause contained in the decedent's trust applies to the decedent's widow. We affirm the trial court's ruling that it does.

FACTS

The decedent, Richard Genger, died on February 5, 1994, survived by his only child, Elizabeth, and his second wife, Sachiko, whom he had married in 1982. Elizabeth, the decedent's daughter from his first marriage, was married to Robert Delsol.

Richard Genger and his brother Robert spent their working lives at Pacific Steel Casting Co., Inc., a foundry in Berkeley that had been started by their father. In 1973, Robert Delsol, Richard Genger's son-in-law, went to work for Pacific Steel. Thereafter, Delsol and the Genger brothers enjoyed a close working and personal relationship.

In 1979 the Genger brothers formed Tri-Pacific, Inc., as a holding company for the Gengers' shares in Pacific Steel and for their real estate and other business interests. Richard Genger was chairman of the board of Tri-Pacific from the time of the company's formation until his death. He was also senior vice-president of Pacific Steel until his semiretirement in 1989.

In the corporate reorganization Richard and Robert Genger each received 36,000 shares of preferred stock of Tri-Pacific. The common stock was owned by Robert Delsol (with Elizabeth having a community property interest in the shares).

Robert Genger, the decedent's brother, suffered a debilitating stroke in 1979. He died in 1992. Soon after his death, his widow, Joan, initiated a lawsuit challenging the 1979 corporate reorganization.[1] That litigation was pending when the decedent executed the estate planning documents at issue in this appeal.

In late November 1993, Richard Genger told his son-in-law, Robert Delsol, that his health was failing and that he wanted to formalize the estate plan he and Delsol had been discussing for over a year. Genger's first priority was to ensure that his wife, Sachiko, was well provided for. He had already made her beneficiary of his individual retirement account (IRA) funds (valued at $900,000) and of his pension benefits (providing income of $52,668 per year). He also wanted her to have the house in Alameda in which the couple lived. That house had been built in 1988 or 1989 with Tri-Pacific funds and was owned by Tri-Pacific. Genger wanted Sachiko to

---

[1] Joan Genger's challenge asserted that the reorganization was accomplished by Richard Genger's exercise of a power of attorney for Robert which was invalid because Robert was incompetent both at the time he signed it in January 1979 and when it was exercised. The dispute was eventually settled two days before Richard Genger died.

have the house free of any liens or encumbrances, namely for Genger's indebtedness to the corporation of approximately $650,000.

Genger also wanted his Tri-Pacific stock to be returned to the corporation. He wanted the corporation to go forward, but he wanted to keep his stock in the family, unavailable to "outside shareholders." He did not want his family business to be at risk of being liquidated because of litigation such as the lawsuit as brought by Joan Genger.

Genger was fully aware of the financial position of Tri-Pacific. However, Genger never expressed concern about the value of the stock. The stock had been appraised at $360,000 for purposes of *Robert* Genger's estate. Delsol was concerned that the stock might be worth less than the $1.7 million consideration (the house and the debt) such that there could be tax consequences if the Internal Revenue Service construed the exchange as a corporate dividend to the trust. Nevertheless, he believed it was a fair exchange.

Delsol passed on Genger's instructions to Calvin Wong, Tri-Pacific's vice-president of finance. Wong knew of Genger's estate plan from frequent prior conversations with Delsol. He never discussed the estate plan with Genger directly. Wong retained a law firm to prepare the necessary estate documents, and he transmitted the basic structure of Genger's estate plan: Genger's Tri-Pacific stock to be exchanged for the house and forgiveness of the debt. The attorneys understood that Genger had no intent to give the stock to Sachiko.

Attorney Kristin Pace was the actual drafter of the documents, which were reviewed and edited by James Soper. Implementation of Genger's estate plan was left to the drafting attorneys, who concluded that the plan could best be accomplished through a revocable trust coupled with a pour-over will and a corporate stock redemption agreement that would bind Tri-Pacific as well as the trust.

In drafting the declaration of trust, Attorney Pace decided on her own initiative to include a no contest clause. First she noted that Genger's prior will had contained a no contest clause. Further, she believed it was good practice to include one in cases involving a second marriage. She received no explicit instruction about the no contest clause from Calvin Wong, from Robert Delsol, or from Richard Genger. In fact, Attorney Pace had no contact with Genger until the day the documents were signed. All her communication was with Calvin Wong.

Pace learned from Wong that the stock was worth between $360,000 and $1 million. She was concerned that the stock might be worth less than the

house; hence, forgiveness of the debt was added to the consideration. Wong's directive to the attorneys stated that the stock had a liquidation value of $3.6 million. But Pace considered the liquidation value irrelevant as there was no thought being given to liquidating the corporation.

The attorneys submitted a rough draft of the estate documents to Calvin Wong, who in turn passed them to Robert Delsol. Delsol reviewed the drafts with Genger, showing him a list of the assets totaling over $3 million that would be conveyed to Sachiko: the house, the IRA, the pension plan, the forgiveness of the debt. Genger was pleased that he could provide so much for his wife. Genger was ready to sign the documents as drafted, but Delsol insisted that he wait for a meeting with the attorneys.

On December 8, 1993, the drafting attorneys met with Richard Genger for the first time. (Actually Attorney James Soper had known Genger since their high school days, but he had not seen him for 12 years.) Sachiko Genger was also present at this meeting. Soper went over each of the documents with Genger, paragraph by paragraph, summarizing most portions and reading others verbatim. As Soper went over the documents, Genger indicated his approval of the provisions, usually saying "Fine" or "That's good." Pace, Soper, Wong and Delsol had no doubt that Genger understood and assented to the contents of all the documents, including the no contest clause.

Genger then executed the three estate documents. Robert Delsol executed the corporate stock redemption agreement on behalf of Tri-Pacific. Upon execution of the declaration of trust, Genger's shares of Tri-Pacific were transferred to the trust.

After executing the estate documents, Genger became worried that Sachiko did not seem to understand exactly what she would be receiving upon his death. Genger told his wife to retain her own attorney, preferably one who spoke Japanese, to explain the estate plan to her. Sachiko did so; she retained the services of Martin Nakahara, who met with Genger and concluded he was competent to make the testamentary dispositions. Nakahara also confirmed that Genger intended to make the dispositions and agreements set forth in the estate documents. Nakahara then explained the documents and the dispositions to Sachiko.

*The Estate Documents*

The decedent's estate plan consisted of three documents: a declaration of trust, a pour-over will, and the corporate stock redemption agreement. The core provision which integrates that plan calls for Tri-Pacific to redeem the

decedent's stock in exchange for transferring the Alameda house to Sachiko and relieving the decedent's estate from the debt the decedent owed to Tri-Pacific.

The corporate stock redemption agreement provides that upon the death of Richard Genger, the corporation shall redeem and the estate of Richard Genger shall surrender for redemption all of Richard Genger's stock in Tri-Pacific. In consideration therefor, the corporation shall cancel Richard Genger's indebtedness to the corporation and shall distribute the Alameda house to Richard Genger's estate. The agreement further provides that Richard Genger and Tri-Pacific "agree that [Richard Genger's] shares have a value that is equal to the value of the real property located at 9 Tullamore, Alameda, California, plus the amount of the indebtedness owing by [Richard Genger] to the Corporation as of the date of this agreement."

The pour-over will leaves all of the decedent's estate to the trustee of the trust, to be distributed in accordance with the declaration of trust. The will directs the executor to facilitate the redemption of the Tri-Pacific stock pursuant to the corporate stock redemption agreement.

The declaration of trust leaves, upon the trustor's death, two partnership interests to Robert Delsol and the balance of the trust assets to Sachiko, "provided that, it is the settlor's desire that the successor trustee and the settlor's wife take all such action as is necessary or appropriate to facilitate that certain corporate stock redemption agreement so that all of the shares of Class C preferred stock in Tri-Pacific, Inc., a California corporation, which are to be distributed to the settlor's wife, may be redeemed by such corporation in consideration for the transfer to settlor's wife of the real property located at 9 Tullamore, Alameda, California, plus the amount of the settlor's indebtedness owing by the settlor to Tri-Pacific, Inc. as of the date of the Corporate Stock Redemption Agreement."

Further, the trust instrument gives the trustee full power and authority to "to take all actions which may be necessary or appropriate to facilitate the redemption of the Class C shares of preferred stock in Tri-Pacific, Inc., a California corporation, on the terms and conditions and for the consideration mentioned in that certain Corporate Stock Redemption Agreement between the settlor and Tri-Pacific, Inc."

The trust instrument contains a no contest clause: "If any beneficiary under this trust, singly or in conjunction with any other person or persons, contests in any court the validity of this trust or of a deceased settlor's last will or seeks to obtain an adjudication in any proceeding in any court that

this trust or any of its provisions or that such will or any of its provisions is void, or seeks otherwise to void, nullify, or set aside this trust or any of its provisions, then that person's right to take any interest given to him or her by this trust shall be determined as it would have been determined if the person had predeceased the execution of this Declaration of Trust without surviving descendants."

On March 30, 1994, less than two months after Genger's death, Delsol, as trustee, surrendered Genger's stock, and Tri-Pacific canceled them. Tri-Pacific also deeded the Alameda house to Delsol as trustee and canceled Genger's debt. Delsol, as trustee, later transferred the partnerships left to him. However, Delsol declined to transfer title of the house to Sachiko pending the court's determination whether she forfeits her entitlement to the trust assets pursuant to the no contest clause. (Sachiko continues to live in the house, rent free and with property taxes paid by the trust.)

## PROCEDURAL HISTORY

The decedent's widow, Sachiko Genger, filed two separate petitions pursuant to Probate Code section 21320 seeking advance rulings on whether she could proceed with certain litigation without violating the no contest clause contained in the decedent's trust.[2] In her first petition, Sachiko sought a determination whether her proposed complaint against Robert Delsol and Tri-Pacific would be a contest. That proposed complaint challenges, under various theories, the corporate stock redemption agreement primarily on the ground that the corporate stock redeemed by Tri-Pacific was actually worth $3.6 million, far more than the consideration (the house, the forgiveness of the debt) received by the trust. The trial court ruled that Sachiko's proposed complaint would be a contest within the terms of the no contest clause.

After the trial court issued its tentative decision on Sachiko's first petition, Sachiko filed her second petition, seeking a determination whether her proposed (third) petition to declare the no contest clause unenforceable against her would constitute a contest. The court ruled that Sachiko's request for a determination of the enforceability of the no contest clause would not be a contest. However, the court then ruled on the merits of that third petition and determined that the no contest clause is enforceable against her. The trial court issued a single statement of decision and order combining its rulings on all three petitions. Sachiko appeals.

---

[2]Probate Code section 21320 permits a beneficiary to obtain a determination from the probate court whether "a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause."

Discussion

## I. *Would Sachiko's Proposed Complaint Be a Contest?*

In 1989 the Legislature codified within the Probate Code much of the existing case law governing enforcement of no contest clauses. (Stats. 1989, ch. 544, § 19, p. 1825; repealed and reenacted by Stats. 1990, ch. 79, § 14, p. 463, operative July 1, 1991.) (All further section references within this opinion are to the Probate Code.) In proposing the codification, the Law Revision Commission commented in part: "A major concern with the application of existing California law is that a beneficiary cannot predict with any consistency when an activity will be held to fall within the proscription of a particular no contest clause. To increase predictability, the proposed law recognizes that a no contest clause is to be strictly construed in determining the donor's intent. This is consistent with the public policy to avoid a forfeiture absent the donor's clear intent. The law also makes clear that a request by a beneficiary for declaratory relief in the form of a petition for construction of the instrument to determine whether a particular activity would violate a no contest clause does not itself trigger operation of the clause." (20 Cal. Law Revision Com. Rep. (Jan. 1989) p. 12, fns. omitted.)[3]

 The question raised by Sachiko's first petition was whether the filing of Sachiko's proposed complaint would constitute a "contest" within the meaning of the trust's no contest clause. The trial court concluded that it would, and we uphold that ruling.

 The California Supreme Court recently outlined the principles for evaluating a no contest clause: "No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator. [Citations.] Because a no contest clause results in a forfeiture, however, a court is required to strictly construe it and may not extend it beyond what was plainly the testator's intent. [Citations.] [¶] 'Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.] '[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the

---

[3]The declaratory relief procedure provided in section 21320 (see fn. 2, *ante*) codified a practice which had been permitted by the courts. (E.g., *Estate of Black* (1984) 160 Cal.App.3d 582, 588-589 [206 Cal.Rptr. 663] [request for declaratory relief within the heirship proceeding was not itself a contest]; *Estate of Friedman* (1979) 100 Cal.App.3d 810, 819 [161 Cal.Rptr. 311] [request within heirship proceeding for determination of interests under the will was equivalent to declaratory relief action]; *Estate of Bullock* (1968) 264 Cal.App.2d 197, 200, 205 [70 Cal.Rptr. 239] [on petition for instructions to trustee, probate court could give declaratory relief on whether petition to remove trustee would violate no contest clause].)

purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (*Burch* v. *George* (1994) 7 Cal.4th 246, 254-255 [27 Cal.Rptr.2d 165, 866 P.2d 92].)

## A. *Not an attack on will or trust*

 Section 21304 declares that a no contest clause "shall be strictly construed." Sachiko contends that under a strict construction of the no contest clause, the clause is triggered only upon an attack on the will or the trust;[4] it does not apply to an attack on a separate instrument, the corporate stock redemption agreement. (E.g., *Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 383-384 [236 Cal.Rptr. 376] [no contest clause in pour-over will not applicable to attack on inter vivos trust]; see also *Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1179-1180 [241 Cal.Rptr. 330] [no contest clause in inter vivos trust by its terms not applicable to action to enforce written agreement to create trust for benefit of claimant].)

We reject the argument. A "contest" is not confined to a *direct* attack on a will or trust instrument.[5] It may include a separate legal proceeding which is designed to thwart the testator's expressed wishes.[6] (E.g., *Burch* v. *George, supra*, 7 Cal.4th 246 [complaint against pension plan administrators]; *Estate of Friedman, supra*, 100 Cal.App.3d 810 [complaint against widower to establish constructive trust]; *Estate of Kazian* (1976) 59 Cal.App.3d 797 [130 Cal.Rptr. 908] [separate complaint to establish community interest].)

*Burch* v. *George, supra*, 7 Cal.4th 246, is on point. In that case the surviving widow proposed to file a complaint in federal court against the

---

[4]The no contest clause at issue here applies if any trust beneficiary "contests in any court *the validity of this trust or of a deceased settlor's last will* or seeks to obtain an adjudication in any proceeding in any court *that this trust* or any of its provisions *or that such will* or any of its provisions is void, or seeks otherwise to void, nullify, or set aside *this trust* or any of its provisions . . . ." (Italics added.)

[5]A "contest" is defined by statute as "an attack in a proceeding on an instrument or on a provision in an instrument." (§ 21300, subd. (a).)

[6]The Legislature expressly left it to the courts to decide whether a particular proceeding constitutes a contest. Section 21301 declares: "This part is not intended as a complete codification of the law governing enforcement of a no contest clause. The common law governs enforcement of a no contest clause to the extent this part does not apply." The Law Revision Commission comment states that issues such as "whether proceedings in estate administration other than a direct contest . . . violate the clause, continue to be governed by relevant case law . . . ." (20 Cal. Law Revision Com. Rep. (Dec. 1989) p. 1979.)

administrators of the decedent's pension plan to assert her community property rights to the plan benefits. The widow argued that because her proposed complaint sought no relief directly from the trust or the estate it was not a "contest." The Supreme Court rejected the argument: "Although the proposed federal complaint does not name the trust or Frank's estate as defendants, it does seek recovery of the pension plan death benefits and life insurance benefits on the theory that these assets belong to Marlene and that they should not have been transferred to the trust. If successful, the federal complaint . . . would effectively nullify or thwart the provisions in the trust instrument that provide for the allocation of all assets placed in the trust estate to the various subsidiary trusts. It would similarly result in the nullification of Frank's clearly stated intent that Marlene be put to an election of her independent rights to all property transferred to the trust. Since it is the intention of the trustor that controls [citation], the mere absence of the trust as a defendant in the proposed federal [complaint] is not determinative." (*Id.* at pp. 260-261; but see *Jacobs-Zorne* v. *Superior Court* (1996) 46 Cal.App.4th 1064, 1075-1077 [54 Cal.Rptr.2d 385] [whether an action thwarts the testator's testamentary purposes is not a proper test].)

*Estate of Friedman, supra,* 100 Cal.App.3d 810, is also instructive. There the decedent executed a will, a family trust, and a marital trust. The bulk of the decedent's assets were placed in the marital trust for the benefit of the decedent's surviving second husband. The decedent's daughter from her first marriage was given $50,000 under the will and was designated the life income beneficiary under the family trust. She requested a determination whether she would violate the no contest clause contained in the will by filing a proposed complaint against the decedent's surviving husband seeking to impose a constructive trust upon him for all the estate assets he obtained and to restrain him from exercising his power of appointment under the marital trust. The court concluded that the proposed complaint would constitute a contest as it would frustrate the decedent's testamentary plan.

In the present case, Sachiko's proposed complaint directly challenges the corporate stock redemption agreement under various theories. The first two causes of action seek reformation and rescission of the corporate stock redemption agreement on the ground that the decedent's shares of stock were worth far more ($3.6 million) than the decedent thought. In the fourth cause of action, Sachiko seeks to impose a constructive trust for her benefit upon the now-redeemed stock, and in the sixth cause of action she seeks to compel Delsol to distribute the corporate stock to her.[7]

The probate court found that the corporate stock redemption agreement was "the cornerstone" of the decedent's integrated estate plan such that

---

[7]In her third cause of action Sachiko seeks damages from Delsol for breach of his fiduciary duty to the stockholders of Tri-Pacific, and in her fifth cause of action she requests

Sachiko's attack on the corporate stock redemption agreement would be an attack on the trust and would entirely frustrate the decedent's intentions. We agree.

Sachiko's complaint, if successful, would completely unravel the decedent's estate plan by setting aside the core of that plan, the corporate stock redemption agreement. The complaint seeks to return the corporate stock to the trust estate, thereby nullifying the provisions of the trust calling for surrender of the stock to Tri-Pacific for redemption pursuant to the corporate stock redemption agreement.[8] The complaint would also thwart the decedent's plan to leave to Sachiko the couple's house in Alameda, which was to be transferred into the trust by Tri-Pacific in exchange for the redemption. Furthermore, the complaint would thwart the decedent's expressed intention to insulate his family corporation from the threat of litigation.

The no contest clause applies if any beneficiary seeks "to void, nullify, or set aside this trust or any of its provisions . . . ." The trial court correctly concluded that Sachiko's complaint would nullify key provisions of the trust and, hence, would be a "contest" within the meaning of the no contest clause.

Sachiko contends, however, that Richard Genger was mistaken or misled as to the value of his stock; hence, the attack on the corporate stock redemption agreement is an effort not to thwart the decedent's intent, but to reform the corporate stock redemption agreement to reflect his true intent and thereby to enhance the value of the estate. Sachiko relies upon *Estate of*

---

involuntary dissolution of Tri-Pacific. Sachiko relies upon the principle that an action against third parties in their individual capacities, to impose personal liability for tortious conduct, is not a contest. (*Poag* v. *Winston, supra,* 195 Cal.App.3d 1161, 1175-1176.) However, in the present case, the third and fifth causes of action are directed at Delsol in his capacity as controlling shareholder of Tri-Pacific. Both causes of action presuppose Sachiko's own status as a shareholder of the corporation and thereby presuppose nullification of the corporate stock redemption agreement.

[8]As already set out in the statement of facts, *ante,* the declaration of trust provides for the balance of the trust assets to be transferred to Sachiko "provided that, it is the settlor's desire that the successor trustee and the settlor's wife take all such action as is necessary or appropriate to facilitate that certain Corporate Stock Redemption Agreement so that all of the shares of Class C preferred stock in Tri-Pacific, Inc., a California corporation, which are to be distributed to the settlor's wife, may be redeemed by such corporation in consideration for the transfer to settlor's wife of the real property located at 9 Tullamore, Alameda, California, plus the amount of the settlor's indebtedness owing by the settlor to Tri-Pacific, Inc. as of the date of the Corporate Stock Redemption Agreement."

Furthermore, the will directs the executor and the trust instrument authorizes the trustee "to take all actions which may be necessary or appropriate to facilitate the redemption of the Class C shares of preferred stock in Tri-Pacific, Inc., a California corporation, on the terms and conditions and for the consideration mentioned in that certain Corporate Stock Redemption Agreement between the settlor and Tri-Pacific, Inc."

*McCarthy* (1970) 5 Cal.App.3d 158, 166-167 [85 Cal.Rptr. 50], in which the court held that an action by the executors seeking to rescind a deed which conveyed the decedent's ranch to the testatrix's corporation during her lifetime was not a contest. The court reasoned that the rescission action was an effort to recover possession of the decedent's property on grounds upon which the decedent herself might have sought recovery during her lifetime (fraud and undue influence). Further, the court explained that the rescission action, if successful, would enhance the decedent's estate rather than thwart the testator's estate plan.

The *McCarthy* case is readily distinguishable. The challenged deed in that case was an intervivos transfer, not, as in the present case, part of an integrated estate plan. In *McCarthy*, the decedent's will declared the incorporated ranch to be part of the decedent's estate; hence, in bringing the rescission action the executors acted under their statutory authority to marshal all assets of the estate. Here, in contrast, the trust instrument expressly calls for transfer of the stock out of the trust estate for redemption by Tri-Pacific, while Sachiko's proposed complaint seeks a contrary result.

B. *No attack by beneficiary*

Section 21303 declares that a no contest clause is enforceable "against a beneficiary who brings a contest within the terms of the no contest clause." Sachiko argues that she proposes to pursue her complaint not as a beneficiary of the trust but as the personal representative of the decedent's estate; hence, the no contest clause is not enforceable against her.

The trial court rejected the argument for two sound reasons. First, Sachiko has not been named representative of the estate. The decedent's will names Delsol as executor of the estate. The decedent told Delsol he did not believe Sachiko was capable of serving as executor. At the time of the proceedings on Sachiko's petitions, no ruling had been made on appointment of a representative of the estate.[9]

Second, the trial court noted that the no contest clause applies to any trust beneficiary acting "singly or in conjunction with any other person or persons." The court reasoned that Sachiko "cannot take off the 'beneficiary' hat and put on the 'personal representative' hat without running afoul of this provision."

---

[9]Sachiko had petitioned to be named as administrator of the estate. Delsol objected and also petitioned to be named executor. It was Delsol's position that because there are no assets in the estate (all assets having been transferred to the trust) no personal representative was necessary. The court deferred ruling on the petitions until after decision on the no contest clause.

Again, we uphold the probate court's ruling. The court relied upon an out-of-state case, which seems to be the only reported case on point. In *Rossi v. Davis* (1939) 345 Mo. 362 [133 S.W.2d 363, 125 A.L.R. 1111] the decedent had before his death placed all his assets in trust, and the trust instrument contained a no contest clause. One of the decedent's daughters was appointed administrator of the estate and then instituted a proceeding in that capacity to attack the trust instrument and return the trust property to the estate. She argued, as Sachiko does here, that because the contest was prosecuted by her as administrator, not individually, she did not violate the no contest provision. The court rejected the argument: "[i]f the [contest] had been successful and the trust instrument adjudged invalid, thus leaving the property in question as assets of the estate of [the decedent], Mrs. Davis would have shared therein as heir and distributee. She thus not only represented, as administrator, the Rossi estate and in a way the heirs and distributees, of whom she was one, but, being an heir and distributee, she had a personal, individual interest in having the trust instrument set aside." (133 S.W.2d at p. 373.)

We find that reasoning persuasive. Were Sachiko to prevail in her attack on the corporate stock redemption agreement so that the decedent's corporate stock were returned to the trust estate, the sole beneficiary of that effort would be Sachiko herself. Sachiko would receive that stock as the only person entitled to receive the residue of the trust assets. Thus, even were she to pursue the complaint on behalf of the estate, she would also be the beneficiary.[10]

C. *No intent to apply to widow*

██ By its terms, the no contest clause applies if "any beneficiary under this trust" seeks to nullify any provision of the trust. There are only two beneficiaries of the trust, Robert Delsol and Sachiko Genger. Obviously, on the face of the trust instrument, the no contest clause applies to Sachiko. Sachiko argues, however, that there was no evidence that the decedent specifically intended the no contest clause to apply to her.

---

[10]Nor is Sachiko's position supported by the line of cases holding that a proceeding is not a contest when the claim to property is based on a source of right independent of the will or trust instrument. (E.g., *Jacobs-Zorne* v. *Superior Court*, *supra*, 46 Cal.App.4th 1064, 1078-1080 [action to declare bank accounts as joint tenancy property]; *Varney* v. *Superior Court* (1992) 10 Cal.App.4th 1092, 1107 [12 Cal.Rptr.2d 865] [creditor's claim to recover corporate stock under oral contract]; *Estate of Watson* (1986) 177 Cal.App.3d 569 [223 Cal.Rptr. 14] [creditor's claim to enforce oral agreement]; *Estate of Black*, *supra*, 160 Cal.App.3d 582, 590-592 [action to determine property rights based upon implied domestic partnership agreement].) Here, Sachiko's claim of entitlement to the corporate stock is based entirely upon her status as beneficiary of the trust. Her claim has no independent source.

In *Burch* v. *George, supra*, 7 Cal.4th at page 258, footnote 8, the Supreme Court clarified that extrinsic evidence may properly be considered in construing a no contest clause. Sachiko complains that although the trial court properly admitted evidence of the decedent's testamentary purposes and of the circumstances surrounding the execution of the testamentary documents, the trial court failed to apply the proper test for evaluating the extrinsic evidence. Sachiko argues that the trial court should have decided whether the evidence showed that the decedent "unequivocally intended" to disinherit Sachiko in the event she were to bring a challenge to the trust.

Sachiko further argues that in light of the extrinsic evidence no such finding could be made here: The decedent intended Sachiko to be the primary beneficiary of his estate. The no contest clause was inserted in the trust instrument on the initiative of the drafting attorneys; the decedent did not request it. When Attorney Soper reviewed the estate documents with Genger, Soper did not specifically mention that the no contest clause would apply to Sachiko. In fact, Soper testified that because Genger had provided so generously for Sachiko, Genger did not anticipate that Sachiko would be affected by the no contest clause.

We conclude that Sachiko has misstated the applicable legal standard for determining who qualifies as a "beneficiary" under the no contest clause.[11] The test advocated by Sachiko (whether the decedent "unequivocally intended" a forfeiture by the beneficiary) comes from language in *Burch* v. *George, supra*, 7 Cal.4th at pages 256 and 263. The question in *Burch*, however, was not to whom the no contest clause should be applied, but to what activities, i.e., whether the complaints proposed to be filed by the widow would constitute a "contest." On that latter question, the court examined the trust instrument and the surrounding circumstances to determine the decedent's "unequivocal" testamentary intentions. In so doing, the *Burch* court was applying the test enunciated in *Estate of Kazian, supra*, 59 Cal.App.3d at page 802: the court " 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate the [testator's] unequivocally expressed intent from the reach of the no-contest clause.' " (Quoted in *Burch* v. *George, supra*, 7 Cal.4th at p. 255.)

The question whether Sachiko's proposed complaint would constitute a "contest" has already been discussed in part A, *ante*. The question posed here is whether the decedent intended the no contest clause to extend to Sachiko, his surviving spouse.

The trial court found that the decedent intended Sachiko to be precluded from taking any interest in the family business; hence, the court found that

---

[11]The trial court questioned the "unequivocally intended" test advocated by Sachiko, but found the issue "beside the point."

the decedent intended Sachiko to forfeit the dispositions made for her in the event she brought any action to claim ownership of the stock. Furthermore, the court found from the evidence that Genger never contemplated that it would be Sachiko who would seek to dismantle the estate plan because Genger believed he had provided generously for Sachiko. These findings are supported by the evidence and justify the conclusion that Sachiko qualifies as a beneficiary within the terms of the no contest clause.

## II. *Is the No Contest Clause Enforceable Against Sachiko?*

■ Section 21307 sets forth an exemption from enforcement of a no contest clause when the challenged provision benefits a person involved in drafting the instrument: "A no contest clause is not enforceable against a beneficiary to the extent the beneficiary, with probable cause, contests a provision that benefits any of the following persons: [¶] . . . [¶] (b) A person who gave directions to the drafter of the instrument concerning dispositive or other substantive contents of the provision or who directed the drafter to include the no contest clause in the instrument, but this subdivision does not apply if the transferor affirmatively instructed the drafter to include the contents of the provision or the no contest clause."

■ One court declared the legislative purpose as follows: "The policy underlying section 21307 arises from the trust and power a testator or trustor necessarily places in those who participate in the drafting of a will or trust instrument. Because such participants are in a position where they can easily control or influence the distribution of property under the instrument to their benefit and contrary to the true intent of the trustor or testator, the Legislature has deemed it appropriate to guard against potential abuses by enacting section 21307." (*Graham* v. *Lenzi* (1995) 37 Cal.App.4th 248, 257 [43 Cal.Rptr.2d 407].)[12]

■ Sachiko argues that section 21307 applies to her and renders the no contest clause unenforceable. She reasons as follows: The corporate stock

[12]Section 21307 continues without change section 21307 of the repealed Probate Code (added by Stats. 1989, ch. 544, § 19, p. 1825, repealed by Stats. 1990, ch. 79, § 14, p. 463.). Section 21307 of the repealed code, in turn, expanded upon former subdivision (d) of section 6112, which had provided that a no contest clause does not apply to an attack on a provision of the will that benefits a witness to the will. The Law Revision Commission comment states, "Existing California law precludes enforcement of a no contest clause where the challenge is to a gift to an interested witness to a will. This limitation is appropriate because of the danger of fraud or undue influence where a devise is made to a person involved in the execution of the will itself. The rule should be extended beyond witnesses to other persons who prepare or participate in the preparation of an instrument, specifically persons who draft or transcribe the instrument or who give directions concerning dispositive or other substantive provisions of the instrument. These persons are in an even more sensitive position than a witness to a will." (20 Cal. Law Revision Com. Rep. (Jan. 1989) p. 13, fns. omitted.)

redemption agreement benefits Robert Delsol; Robert Delsol gave directions to the drafters concerning the contents of the estate documents; therefore, Sachiko's attack on the corporate stock redemption agreement falls within the exemption of section 21307 for actions brought against interested participants.

The trial court rejected the argument for two reasons: There was no evidence Sachiko was acting with probable cause and the decedent fully concurred in the instructions given by Robert Delsol. We find it unnecessary to reach Sachiko's assertion that the trial court's findings are legally insufficient, as we hold that the order disposing of Sachiko's third petition is not appealable.[13] Sachiko contends that the trial court's order on her third petition is appealable pursuant to section 17207. That section, however, permits an appeal only from a final order made pursuant to section 17200. As we will explain below, the trial court's order on Sachiko's third petition was not a final order.

## A. *Declaratory Relief Is Not Available*

Section 21320 authorizes a declaratory relief proceeding whereby the beneficiary under a will or trust may obtain an advance ruling on whether a particular legal challenge would be a contest within the meaning of a no contest clause.[14] Subdivision (b) of section 21320 makes clear that an application for an advance ruling is not itself a contest. However, the statute also makes clear that the application for an advance ruling may not seek a determination of the merits of the legal challenge. To that end, subdivision

---

[13]The Legislature has recently clarified that an order made pursuant to section 21320 determining whether an action would be a contest is appealable. (§ 7240, subd. (q); *Jacobs-Zorne* v. *Superior Court, supra,* 46 Cal.App.4th at pp. 1071-1072; see also *Estate of Richter* (1993) 12 Cal.App.4th 1361, 1364-1366 [16 Cal.Rptr.2d 108].) Hence, there is no question that the order on Sachiko's first petition, determining that her proposed complaint would be a contest, is an appealable order.

[14]Section 21320 provides: "(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination whether a particular motion, petition, or other act by the beneficiary, including, but not limited to, creditor claims under Part 4 (commencing with Section 9000) of Division 7 and Part 8 (commencing with Section 19000) of Division 9, would be a contest within the terms of the no contest clause. [¶] (b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) by the beneficiary is limited to the procedure and purpose described in subdivision (a) and does not require a determination of the merits of the motion, petition, or other act by the beneficiary. [¶] (c) A determination of whether Section 21306 or 21307 would apply in a particular case may not be made under this section."

(c) of section 21320 expressly states that the declaratory relief procedure is not available for a determination whether section 21306 or 21307 applies.[15]

Good reasons exist for excluding sections 21306 and 21307 from the declaratory relief procedure. Sections 21306 and 21307 provide that a no contest clause is unenforceable against the contesting beneficiary when the contest is brought with probable cause and the contest is of a certain type, i.e., a claim of forgery, revocation, or transfer to a disqualified person (§ 21306) or an attack on a provision benefiting the drafter (§ 21307). To determine whether section 21306 or 21307 apply necessarily requires the trial court to decide whether the beneficiary had probable cause to bring the contest. Yet, that question, in turn, will entail an examination at least on some level of the underlying merits of the contest.[16] And such an examination is exactly what the Legislature sought to avoid when it carved out the exclusion from the declaratory relief procedure.[17]

A determination of whether sections 21306 and 21307 apply—whether the no contest clause will be enforced against the contesting beneficiary—cannot be made in advance of the beneficiary's contest. By their terms sections 21306 and 21307 come into play only if the beneficiary actually brings a contest, not if the beneficiary merely obtains an advance ruling that a proposed action, if filed, would be a contest.[18] Indeed, if the beneficiary declines to pursue the contest, the question whether the no contest clause is unenforceable will never arise. Hence, the applicability of sections 21306 and 21307 is not ripe for decision until the contesting beneficiary has actually pursued her contest.

As we construe the statutory scheme, section 21320 provides, as the parties phrase it, a "safe harbor" for beneficiaries who seek an advance

[15]Although Sachiko relies only upon section 21307, not section 21306, we mention both sections, as both are treated equally by subdivision (c) of section 21320.

[16]For purposes of the discussion at hand, we need not decide the standard for evaluating whether the beneficiary acted with probable cause.

[17]The Law Revision Commission's comment indicates that the Legislature's purpose in excluding from the declaratory relief procedure a determination of whether section 21306 or 21307 apply was to assure that the declaratory relief procedure is not used for a determination of the contest on the merits: "Subdivision (b) is not intended to enable a determination of the merits of an attack, but only whether a particular act would be considered an attack. . . . [¶] Subdivision (c) emphasizes the point that this section is not intended to permit a determination on the merits by excluding from the coverage of the section a determination of the application of the two statutory exceptions to enforcement of a no contest clause." (20 Cal. Law Revision Com. Rep., *supra*, pp. 1981-1982.)

[18]Section 21306 provides: "A no contest clause is not enforceable against a beneficiary to the extent the beneficiary, with probable cause, *brings a contest* [on certain grounds]." (Italics added.) Section 21307 similarly protects a beneficiary who "contests" a provision benefiting certain participants.

judicial determination of whether a proposed legal challenge would be a contest. But the issue permitted to be decided in that "safe harbor" proceeding is justifiably confined to the question whether a proposed action would be a contest. Upon obtaining an adverse ruling, the beneficiary is put to an election: either to accede to the will or trust or to pursue the contest. If the beneficiary chooses to pursue the contest, she may, in another proceeding, assert the exemption of section 21306 or 21307 from the enforceability of the no contest clause. However, pursuant to the proscription of subdivision (c) of section 21320, the beneficiary is not entitled to an additional ruling in advance on whether, if the proposed contest were to be pursued, the no contest clause would nonetheless be unenforceable.

At first glance, however, the Supreme Court's opinion in *Burch* v. *George*, *supra*, 7 Cal.4th 246, seems to suggest to the contrary, that a declaratory relief proceeding is available for a determination of the enforceability of a no contest clause. In that case, the widow sought an advance ruling pursuant to the predecessor of section 21320 on whether her proposed state and federal complaints would constitute a contest within the no contest clause of the decedent's trust. (7 Cal.4th at p. 253.) The court first decided that question. (*Id.* at pp. 254-263.) Then, having concluded that the complaints would be a contest, the court went on to decide whether, if the widow chose to pursue her claims, the no contest clause would be unenforceable against her as a matter of public policy.[19] (*Id.* at pp. 263-268.)

However, no procedural objection seems to have been raised in that case; hence, the court did not purport to decide whether the issue was a proper one for declaratory relief. Furthermore, the *Burch* case is factually distinguishable. The widow in *Burch* did not rely upon section 21306 or 21307; indeed, the court noted that those provisions were not relevant to the case before it. (7 Cal.4th at p. 264, fn. 12.) Instead, the widow argued that a judicially created exception to the enforceability of no contest clauses ought to be made for a beneficiary who has independent rights (e.g., community property rights) to the estate assets. In contrast, here Sachiko relied upon section 21307, which is expressly excluded from the declaratory relief procedure. (§ 21320, subd. (c).)

---

[19]The language used by the court in *Burch* reflects that its decision on the enforceability of the no contest clause was an advance declaration of the widow's rights, applicable *if* the widow chooses to go forward with her contest. "We . . . conclude that enforcement of the clause against Marlene, *in the event she decides to pursue her claims*, is fully consistent with California law . . . ." (7 Cal.4th at pp. 251-252, italics added.) "[W]e hold that a no contest clause is properly enforceable against a surviving spouse who . . . brings a contest . . . based on the assertion of community property rights to estate property. *When a spouse decides to pursue such a challenge*, we see no legal or policy reason that would justify allowing the spouse to also take under the instrument in clear violation of the decedent's intentions." (*Id.* at pp. 267-268, italics added.)

Sachiko's second petition asked whether a third petition—a request for a determination on whether section 21307 applies—would be a contest. In response, Delsol pointed out that pursuant to subdivision (c) of section 21320 the declaratory relief procedure was not available on that question. The trial court, however, ruled on the second petition and concluded that such a request would not be a contest.[20] (The court relied upon *Graham* v. *Lenzi, supra,* 37 Cal.App.4th at pp. 258-259 [request for declaratory relief on whether contestant remains entitled to distribution as an heir is not itself a contest].) The trial court then proceeded to rule on the substantive question raised by the third petition, whether section 21307 applies to Sachiko. And the court concluded that section 21307 does not apply; the no contest clause is enforceable against her.

The trial court's decision on the third petition was plainly a grant of declaratory relief in advance of an actual contest. Sachiko's complaint remained a proposed complaint. The trial court decided section 21307 would apply to Sachiko *if* she were to pursue her *proposed* complaint. That declaratory judgment violates the express prohibition in section 21320, subdivision (c), against such an advance ruling.

### B. *No Final Order*

When a beneficiary asserts the exemption of section 21306 or 21307, the question is whether, notwithstanding the beneficiary's contest, the beneficiary remains a beneficiary under the will or trust. Although that question is not to be determined in a declaratory relief action in advance of the contest (§ 21320, subd. (c)), it obviously must be determined in some proceeding.

When the no contest clause appears in a will, the question whether the no contest clause applies such that a beneficiary forfeits his or her right to take under the will is determined in a proceeding for administration of the decedent's estate to determine the persons entitled to distribution of the estate assets (§ 11700) (formerly called an heirship proceeding). (*Estate of Bergland* (1918) 177 Cal. 227, 229 [170 P. 400]; see *Estate of Friedman, supra,* 100 Cal.App.3d 810, 813; see generally, 64 Cal.Jur.3d, Wills, § 452, p. 532.) When the no contest clause appears, as it does here, in a trust instrument, the appropriate analogous proceeding is one for court intervention in the internal affairs of a trust, e.g., to give instructions to the trustee (§ 17200, subd. (b)(6)) or to ascertain the beneficiaries of the trust and determine to whom property shall be delivered upon termination of the trust (§ 17200, subd. (b)(4)). (See *Estate of Bullock, supra,* 264 Cal.App.2d 197.)

---

[20]Delsol filed a notice of appeal from the ruling on the second petition, but later withdrew his appeal, apparently because the trial court ruled favorably on the substantive question raised in the third petition.

Sachiko asserts that the proceeding on her third petition, although not denominated as such, could be treated as a proceeding under section 17200 to determine whether Sachiko is entitled to receive trust assets.[21] The flaw in this reasoning, however, is that the issue raised by Sachiko's third petition— whether the no contest clause would be unenforceable against Sachiko if she were to pursue her contest—was not ripe for decision.

As we have explained above, a determination of whether sections 21306 and 21307 apply cannot be made in advance of the beneficiary's actual pursuit of the contest. That principle holds true when the proceeding is brought under section 17200.[22] The contesting beneficiary is entitled to one advance determination (whether a proposed action would be a contest), but not two. The beneficiary must pursue her contest and *then* obtain a ruling on whether section 21306 or 21307 render the no contest clause unenforceable.

It follows, then, that the issue raised by Sachiko's third petition is not yet ripe for decision. Sachiko's entitlement to receive trust assets depends upon whether she decides to pursue her attack on the corporate stock redemption agreement. If she does not file her complaint, then the no contest clause obviously will not apply, and the issue under section 21307 will not arise. Only if Sachiko elects to proceed with her contest will section 21307 come into play, giving rise to the question whether the no contest clause is enforceable against her despite her contest.

Because the issue concerning the application of section 21307 was not ripe for decision, the trial court's order, given in the context of what was erroneously treated as a declaratory relief action, was not a final order. Only a final order made pursuant to section 17200 is appealable. (§ 17207.) The trial court's order on Sachiko's third petition is not appealable.[23]

---

[21]After the trial court issued its proposed statement of decision, Sachiko submitted objections and a request for clarification, asking for, among other things, a directive to Delsol, as trustee, to convey the house to her free of any liens or encumbrances. In that one minor respect, the trial court treated the request for clarification as a petition under section 17200, subdivision (b)(6), for instructions to the trustee; the court ordered further hearings on that matter.

[22]We reject Sachiko's assertion that because section 21320, subdivision (c), precludes a determination on whether section 21306 or 21307 apply in a proceeding brought "under this section," declaratory relief is available in a proceeding brought under another section, namely, section 17200. We construe section 21320, subdivision (c), to preclude any *advance* ruling.

[23]We deny Sachiko's request to treat her appeal as a writ petition. Sachiko has an adequate legal remedy in an appeal from an order in a future proceeding in which the issue is ripe for decision.

The order filed July 1, 1996, is modified by striking the trial court's premature determination of the application of section 21307. As so modified, the order is affirmed.

Strankman, P. J., and Swager, J., concurred.

A petition for a rehearing was denied September 10, 1997, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 19, 1997.