[Nos. G018512, G020890. Fourth Dist., Div. Three. Aug. 24, 1998.]

Estate of JAMES M. FERBER, Deceased.
SANDRA PLUMLEIGH, Petitioner and Respondent, v.
RICHARD E. FERBER, Individually and as Executor, etc., Objector and
Appellant.

**COUNSEL**

Loeb & Loeb, Andrew S. Garb, David C. Nelson, James R. Birnberg and Cynthia K. Reilly for Objector and Appellant.

Daniel Leibl, Jeffrey M. Winter and Charles E. Brumfield for Petitioner and Respondent.

**OPINION**

**WALLIN, Acting P. J.**—Richard E. Ferber, executor of the James M. Ferber estate, appeals from two orders finding Sandra Plumleigh would not violate the no contest clause in James's estate by pursuing certain actions against Richard and the estate. We reverse with directions.

James M. Ferber was the personal representative for the estate of his father, Oscar. Due to numerous family disputes, including at least one suit against James, the estate was open for 17 years.[1] Due to his angst over this state of affairs and its negative impact on his health and quality of life, when James had his own will prepared, he directed his attorneys to prepare the strongest possible no contest clause. He wanted to protect his executor, Richard, who was his brother and business partner, from the hardships and attacks he had endured.

The no contest clause was the most detailed in James's will, and he gave his attorney strong direction: "[I]nclude . . . a no contest clause that went as

---

[1] James was only alive for about eight of those years.

far as it could go to avoid any litigation at all involving his estate," and "make the . . . clause as expansive as possible, but . . . make it enforceable."[2]

The clause reads in relevant part: "If any devisee, legatee or beneficiary under this Will, or any legal heir of mine or person claiming under any of them (a) contests this Will or, in any manner, attacks or seeks to impair or invalidate any of its provisions[,] (b) claims entitlement by way of any written or oral contract, (c) challenges the appointment of any person named as an executor, (d) objects in any manner to any action taken or proposed to be taken by my Executor, whether my Executor is acting under court order, advice of proposed action or otherwise, (e) objects to any construction or interpretation of my Will, or any provision of it, that is adopted or proposed by my Executor, (f) unsuccessfully requests the removal of any person acting as an executor, (g) conspires with or voluntarily assists anyone attempting to do any of these things, or (h) refuses a request of my Executor to assist in the defense of any such proceeding, then in that event I specifically disinherit each such person, and all legacies, bequests, devises, and interests given under this Will to that person shall be forfeited as though he or she had predeceased me without issue, and shall augment proportionately the shares of my estate going under this will to, or in trust for, such of my devisees, legatees and beneficiaries who have not participated in such acts or proceedings. . . ."

James executed his will in March 1987 and died in July. The will was probated in September and Richard was appointed the executor with full authority to administer the estate under the Independent Administration of Estates Act. (Prob. Code, § 10400 et seq.) The estate was valued at about $4.6 million.

Sandra, who was a friend of James's, is to receive a $250,000 bequest from the will. She is the only nonrelative named in the will. In May 1995,[3] Sandra, acutely aware of the no contest clause, filed a petition under Probate Code section 21320 for a determination of whether certain actions she contemplated would be in violation of the clause and cause her to be disinherited.[4] The proposed action relevant to this appeal is Sandra's contemplated petition to have Richard removed as executor. The trial court ruled

---

[2]James trusted Richard to properly administer the estate, particularly since Richard was the primary beneficiary.

[3]Sandra asserts this eight-year delay in closing the estate is Richard's fault. Richard counters the delay has been unavoidable. As we shall discuss, this issue is not pertinent to the appeal.

[4]All statutory references are to the Probate Code. Section 21320 has been referred to as a "safe harbor" provision. (Genger v. Delsol (1997) 56 Cal.App.4th 1410, 1428 [66 Cal.Rptr.2d

the portion of the no contest clause that disinherited a beneficiary if the beneficiary attempted to remove the executor violated public policy and was unenforceable.

In March 1996, Sandra brought another petition under section 21320 for a determination whether two proposed declaratory relief actions would violate the no contest clause, one dealing with which portions of the no contest clause are against public policy, and the other concerning the meaning of "co-owners" in the will. In July she filed a similar petition regarding filing of objections to Richard's accounting. The petitions were heard together, and the trial court ruled none of the proposed actions would violate the no contest clause. The court reasoned the objections to the accounting would not violate the no contest clause because the clause violated public policy insofar as it sought to prevent such actions. The court found an action to determine what portions of a no contest clause are enforceable is not, in and of itself, a will contest, concluding the determination would benefit both parties and facilitate judicial economy.[5]

I

"No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator. [Citations.] Because a no contest clause results in a forfeiture, however, a court is required to strictly construe it and may not extend it beyond what was plainly the testator's intent. [Citations.] [¶] 'Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.] '[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the

527]; see also Cal. Law Revision Com. com, 54A West's Ann. Prob. Code (1991 ed.) foll. § 21320, p. 317.) It allows beneficiaries to obtain a ruling on the applicability of no contest clause issues without running the risk of disinheritance. The section reads in relevant part: "(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause. [¶] (b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) by the beneficiary is limited to the procedure and purpose described in subdivision (a) and does not require a determination of the merits of the motion, petition, or other act by the beneficiary. [¶] (c) A determination of whether Section 21306 or 21307 [specifying actions that will not violate a no contest clause] would apply in a particular case may not be made under this section."

[5]The court gave no reason explaining why a petition to determine the meaning of "co-owner" does not trigger the no contest clause.

testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (*Burch* v. *George* (1994) 7 Cal.4th 246, 254-255 [27 Cal.Rptr.2d 165, 866 P.2d 92], fn. omitted; see also § 21303.)

■ James's intent could not have been clearer: He wanted the greatest deterrence against interference the law would allow. His intent is gleaned from the expansive and comprehensive language of the no contest clause and uncontradicted extrinsic direct evidence. ■ Because the extrinsic evidence was uncontradicted, we may determine as a matter of law whether Sandra's proposed actions would trigger the no contest clause. (*Burch* v. *George, supra,* 7 Cal.4th at p. 254, fn. omitted.)

■ An action to remove Richard as executor would contravene the express terms of provision (f) in the no contest clause if Sandra were unsuccessful. Her objections to Richard's accounting would violate provision (d). Sandra's proposed petition to determine which provisions of the no contest clause are enforceable comes within provision (a). And because Sandra's proposed petition regarding the term "co-owner" seeks an interpretation of the term different from Richard's, that petition comes within the purview of provision (e). Thus, the trial court should have ruled all of Sandra's proposed actions would potentially trigger the no contest clause.

We must determine, however, whether any of the applications of the provision were invalid or unenforceable. Richard argues the trial court—and by inference this court—lacks jurisdiction to make that determination. He relies on *Genger* v. *Delsol, supra,* 56 Cal.App.4th 1410, where the beneficiary wife sought a ruling under section 21320 that she was exempt from the no contest clause under section 21307. Section 21307 authorizes contests by beneficiaries against will provisions that benefit certain persons involved in the drafting or execution of the will, as long as the beneficiary has probable cause to bring the contest. The trial court ruled her request for a determination of the enforceability of the no contest clause would not be a contest, but section 21307 did not apply and the no contest clause was enforceable against her. The Court of Appeal found the determination that section 21307 did not apply was premature. In doing so, the court looked to section 21320, subdivision (c), which expressly states the procedure under section 21320 is not available for determining whether section 21307 applies. (*Genger* v. *Delsol, supra,* 56 Cal.App.4th at pp. 1418-1430.)

■ In reaching its conclusion, the *Genger* court reasoned, "To determine whether section 21306 or 21307 apply [*sic*] necessarily requires the

trial court to decide whether the beneficiary had probable cause to bring the contest. Yet, that question, in turn, will entail an examination at least on some level of the underlying merits of the contest. And such an examination is exactly what the Legislature sought to avoid when it carved out the exclusion from the declaratory relief procedure. [¶] . . . [¶] . . . [S]ection 21320 provides . . . a 'safe harbor' for beneficiaries who seek an advance judicial determination of whether a proposed legal challenge would be a contest. But the issue permitted to be decided in that 'safe harbor' proceeding is justifiably confined to the question whether a proposed action would be a contest. Upon obtaining an adverse ruling, the beneficiary is put to an election: either to accede to the will or trust or to pursue the contest. If the beneficiary chooses to pursue the contest, she may, in another proceeding, assert the exemption of section 21306 or 21307 from the enforceability of the no contest clause. However, pursuant to the proscription of subdivision (c) of section 21320, the beneficiary is not entitled to an additional ruling in advance on whether, if the proposed contest were to be pursued, the no contest clause would nonetheless be unenforceable." (*Genger* v. *Delsol*, *supra*, 56 Cal.App.4th at pp. 1428-1429, fns. omitted.)

Richard asserts this reasoning applies equally as well to the limitation contained in subdivision (b) of section 21320. We agree—in general. As the *Genger* court pointed out, subdivision (c) of section 21320 is an express application of the general rule stated in subdivision (b).    A ruling on whether the beneficiary's proposed action would be a will contest may not involve a determination on the merits of the action itself. (*Genger* v. *Delsol*, *supra*, 56 Cal.App.4th at p. 1428, fn. 17.) This makes sense. Otherwise, the summary procedure could be used to allow the very form of challenge and protracted litigation the testator sought to prevent.

We see an important exception to that general proposition, however. If the beneficiary argues a proposed action would not violate the no contest clause because the clause, or a purportedly applicable provision of it, violates public policy, and that determination can be made as a matter of law without reference to any factual matters, the determination may be made in a section 21320 proceeding. Because the determination only involves a matter of law, the proceedings would not be protracted and minimal violence would be done to the testator's intent to avoid litigation during probate.

A contrary rule makes no contest clauses virtually impenetrable to public policy attacks, something we could not countenance. (See *Estate of Parrette* (1985) 165 Cal.App.3d 157, 161-162 [211 Cal.Rptr. 313] [term in trust seeking to divest court of jurisdiction was void for violation of public policy]; cf. *Graham* v. *Lenzi* (1995) 37 Cal.App.4th 248, 255-258 [43

Cal.Rptr.2d 407] [to protest public policy interests, undue influence attack under section 21350 deemed not a will contest].) Beneficiaries must be free to raise public policy issues so the court may address them.[6]

Richard asserts "the Legislature has mandated that no contest clauses be enforced according to their terms unless a statutory exception applies, and no statutory exception is applicable." He errs in his premise. To the contrary, section 21301 provides: "This part is not intended as a complete codification of the law governing enforcement of a no contest clause. The common law governs enforcement of a no contest clause to the extent this part does not apply." The Law Revision Commission cites this section when it notes the exceptions contained in sections 23106 and 23107 are not intended to be exhaustive. (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) §§ 21306, 21307, pp. 314-315, 316; and see *Brian W. v. Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788] [Law Revision Commission explanatory comments are persuasive evidence of legislative intent].)

## II

With this background, we examine the trial court's rulings as to Sandra's proposed actions to determine whether, as a matter of law, the no contest clause was valid and enforceable. The trial court ruled the no contest provision regarding removal of the executor violated public policy. Richard argues the ruling conflicts with long-standing California Supreme Court authority. In *In re Kitchen* (1923) 192 Cal. 384 [220 P. 301, 30 A.L.R. 1008], the court upheld a provision that provided for the disinheritance of anyone who " 'shall commence any suit [against] . . . or cause [the executor] to be sued and disturbed,' " concluding the testatrix "intended to penalize the commencement of any suit whatever." (*Id.* at pp. 387, 389.) Richard points out the clause in this case, involving only *unsuccessful* attempts to oust the executor, is not as expansive as the one upheld in *Kitchen*, which prohibited any action against the executor.

But because *Kitchen* did not involve an attempt to oust the trustee, for misfeasance or otherwise, the Supreme Court never considered the public policy implications of such attempts. The court in *Estate of Bullock* (1968)

---

[6]Richard may argue a beneficiary always has the option of proceeding with a contest based on public policy grounds, and if the beneficiary's argument prevails, the no contest clause would not be enforceable. But public policy issues are too important to require beneficiaries to brave the chilling effect of being required to wager an entire inheritance on the probability of success. If a proposed action will not violate a no contest clause because the clause or a provision of it violates public policy on its face, the ruling should be made at the earliest possible time—during the section 21320 proceeding.

264 Cal.App.2d 197 [70 Cal.Rptr. 239], however, did.[7] The court reasoned, "There can be no question that there is a well-recognized public interest that estates of decedents be administered in such a manner that there can be no doubt with reference to the correctness of the proceedings and in a manner calculated to promote faith in the judicial system. Ordinarily trusts are made for the protection of the beneficiaries who may or may not be sufficiently informed and vigilant to manage large sums of money and conversely it would seem that trusts are not made for the benefit of trustees. . . . [¶] . . . In any event it is fairly obvious that a beneficiary should not be terrorized into relinquishment of a valuable right by any threat of a forfeiture. . . . We take a dim view of any proceeding which has the effect of deterring any interested party from resorting to the probate court in proper cases. It is most important to maintain access to the courts with as little obstruction as possible, and not to stultify the judicial system. We are persuaded that a proper and straight-forward question under the circumstances should not be prevented nor should access to the probate court be impeded by any threat of reprisal." (*Id.* at pp. 201-202.)

Similarly, in the context of a probate in *Estate of Miller* (1964) 230 Cal.App.2d 888 [41 Cal.Rptr. 410], the court noted, "It is always proper for a beneficiary of an estate who believes that the executor is not fulfilling his duty to make the objections which the code permits without risk of suffering a penalty provided by an in terrorem clause. It has even been held in this state that an objection to the appointment of a second executrix designated in a will does not of itself give ground to invoke a forfeiture even though the in terrorem clause provides that there should be forfeiture by any beneficiary who does not 'acquiesce in this . . . will . . . and all provisions thereof.' [Citations.]" (*Id.* at pp. 902-903.)

Richard correctly points out both *Bullock* and *Miller* concluded the no contest clauses were not broad enough to cover attacks against the trustee and executor involved in those cases so the courts' comments about public policy may be regarded as dicta. Even if they are, we find them persuasive. The power of the court is invoked in probate matters, at least in substantial measure, to protect the estate and ensure its assets are properly protected for the beneficiaries. No contest clauses that purport to insulate executors completely from vigilant beneficiaries violate the public policy behind court supervision.

True, as Richard notes in his briefing, the court may have the primary responsibility to monitor an executor's actions. (See *Estate of Effron* (1981)

---

[7]The testamentary instrument in that case was a trust, but we see no analytical difference between wills and testamentary trusts in this regard.

117 Cal.App.3d 915, 930 [173 Cal.Rptr. 93]; § 8500 [court has sua sponte power to remove executor].) But as a practical matter, the courts lack the resources to scrutinize every matter for executor malfeasance. They must rely on beneficiaries to be aware of the facts and raise cogent points. We cannot allow no contest clauses to significantly increase the odds trial courts will become unwitting accomplices to executor malfeasance.

Richard points out the no contest clause provides for forfeiture only if the complaining beneficiary is unsuccessful. But even that type of clause casts much too great of a chilling effect on beneficiaries. Determining whether a beneficiary would be successful in ousting an executor involves factual questions, foreclosing an advance ruling under section 21320. (*Genger v. Delsol, supra,* 56 Cal.App.4th at p. 1429.) Without the protection that section, few, if any, beneficiaries would be bold enough to challenge an executor on penalty of disinheritance.

Nevertheless, we take note of that concern, balancing it with our state's public policy in favor of the validity of no contest clauses, espoused in section 21303.[8] In *Burch v. George, supra,* 7 Cal.4th 246, the Supreme Court recognized such clauses are "favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator." (*Id.* at p. 254.)

And, when public policy interests conflict, as they do here, we engage in a balancing process. (See *Estate of Goulet* (1995) 10 Cal.4th 1074, 1080-1084 [43 Cal.Rptr.2d 111, 898 P.2d 425] [balancing competing interests in determining executor's right to appeal]; and see generally, *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1223 [26 Cal.Rptr.2d 623, 865 P.2d 56] [pretrial detention]; *People v. Johnson* (1998) 62 Cal.App.4th 608, 631-632 [72 Cal.Rptr.2d 805] [defendant's potentially perjured testimony]; *In re Willon* (1996) 47 Cal.App.4th 1080, 1095 [55 Cal.Rptr.2d 245] [disclosure of confidential news source].) We strike a balance in this instance by enforcing no contest clauses against beneficiaries who attempt to oust the executor with a frivolous challenge.

This standard allows beneficiaries who believe an executor is engaged in misconduct to bring the potential malfeasance to the court's attention without fear of being disinherited, furthering the public policy of eliminating errant executors. The beneficiaries would be deterred from bringing frivolous contests, however, which furthers the public policies of discouraging

---

[8]The section reads: "Except to the extent otherwise provided in this part, a no contest clause is enforceable against a beneficiary who brings a contest within the terms of the no contest clause." (§ 21303.)

unnecessary probate litigation and supporting the testator's intent whenever possible.

Based on this analysis, the trial court erred by ruling the no contest clause was invalid because it violated public policy, and Sandra would not violate it by seeking to oust Richard Ferber. The trial court should have found the clause was valid insofar as it prohibited frivolous attempts to oust Richard, but otherwise was invalid. Whether Sandra's challenge was frivolous involves a factual determination that would be improper for a section 21320 proceeding. (*Genger* v. *Delsol, supra,* 56 Cal.App.4th at p. 1431.)

Similarly, the trial court should have found the no contest clause was valid insofar as it prohibited frivolous objections to the accounting, but otherwise was invalid. Absent the ability of a beneficiary to point out defects in the accounting, a court cannot properly perform its duty to monitor the administration of the estate. Enforcing the clause against nonfrivolous objections would violate the same public policy that eschews no contest clauses that effectively prohibit any attempt to remove an errant executor.

The trial court also ruled an action determining the meaning of the term "co-owner" as used in the will would not violate the no contest clause, without specifying why it believed this was so. The issue referred to a provision in James's will giving Richard "[James's] interest in all real property in which Richard and [James] are co-owners." Sandra sought a determination that this language excluded property that James owned with Richard *and* Richard's wife.[9] Provision (e) of the no contest clause disinherited any beneficiary who "objects to any construction or interpretation of [the will] or any provision of it, that is adopted by [Richard]."

We do not see how enforcement of this provision under these circumstances violates any public policy. Nothing about the claim implies any misfeasance by the executor. And because the question merely involves an interpretation of the contract as a matter of law, it does not involve factual matters of which only the beneficiaries might be aware. The court erred by failing to find the proposed action implicated the no contest clause.

The trial court erred, however, by finding an action to determine which portions of the no contest clause violated public policy would not constitute a contest. As was the case with the claim involving section 21307 in *Genger* v. *Delsol, supra,* 56 Cal.App.4th 1410, such a blanket determination is not

---

[9]We assume this interpretation would have increased the chances there would be sufficient assets to allow Sandra to receive her entire $250,000 gift.

ripe for adjudication. (*Id.* at p. 1431.) The terms of the no contest clause might violate public policy regarding some proposed actions but not others. It would be improper to allow Sandra to institute litigation to secure a ruling on public policy issues that she might, or might not, invoke later.

The orders are reversed and the trial court is directed to enter new orders consistent with this opinion. Richard is entitled to his costs on appeal.

Crosby, J., and Sonenshine, J., concurred.

A petition for a rehearing was denied September 15, 1998.