26 Cal.Rptr.3d 239 (2005)
127 Cal.App.4th 1164
ESTATE OF Edwin D. DAVIES, Deceased.
Patricia W. Davies, Petitioner and Respondent,
v.
Timothy Cameron et al., Objectors and Appellants.
No. B173522.
Court of Appeal, Second District, Division One.
March 28, 2005.
*241 Cameron, Pearlson & Foster, Paul R. Pearlson and Susan R. Loh, Long Beach, for Objectors and Appellants.
Richard B. Beauchesne, Oakland, for Petitioner and Respondent.
*240 VOGEL, J.
Edwin Davies provided for the distribution of the bulk of his estate in equal shares to three of his stepchildren and his nephew (Douglas Davies), with Douglas's right to inherit conditioned on his survival for at least 120 days after Edwin's death. It appears that Edwin died at five minutes past midnight on the 119th day before Douglas died, although it is possible Edwin may have died five or ten minutes earlier. This sad sequence of events is relevant because Edwin's testamentary documents also included no-contest clauses, which caused Douglas's widow to file a "safe harbor" petition in which she sought a determination that her claim (that Douglas in fact survived his uncle by 120 days, thus satisfying the survivorship condition) is not a contest. (Prob.Code, § 21320.) The probate court allowed the widow to proceed on this ground, as well as on other grounds discussed below. Edwin's step-children appeal, challenging the probate court's order in its entirety. We agree that Douglas's widow can proceed, but only to the extent she may be able to establish that Douglas satisfied the survivorship requirement.

FACTS

A.
Edwin D. Davies lived from 1912 to 2002. He was married to Patricia Cameron Davies and was stepfather to her three children, Judith Ann Pickett, Jennifer Bitran, and Timothy Cameron. At some point, the first Mrs. Davies either died or there was a divorce, and Edwin married Elizabeth Davies and became stepfather to her sons, Michael MacKenzie and Thomas MacKenzie. Edwin had no children of his own from either marriage, but he had a nephew, Douglas Davies, who was married to Patricia Davies. Douglas died 119 (or 120) days after Edwin died (depending on the ultimate outcome of this case).
In January 1991, Edwin created the Edwin D. Davies Trust in which he provided that if Elizabeth survived him, she would receive their residence and 60 percent of the remaining assets, with the balance distributed 15 percent to Judith, 11 percent to Douglas, 7 percent to Jennifer, and 7 percent to Edwin's housekeeper, Bessie Jordan (with nothing for Timothy). If Elizabeth failed to survive Edwin by 60 days, the entire estate was to be distributed 33 percent to Judith, 27 percent to Douglas, 20 percent to Jennifer, and 20 percent to Bessie Jordan. If any beneficiary failed to survive for a period of 60 days beyond Edwin's death, that gift lapsed.
Edwin restated his trust in 1996, at which time he provided for the division of his estate into two shares if Elizabeth survived him, the marital deduction share (to be held in trust) and the nonmarital share to be distributed 20 percent each to Judith, Jennifer, Timothy, and Douglas, 10 percent *242 to Bessie Jordan, and 10 percent to Thomas MacKenzie (one of Edwin's stepsons by Elizabeth). This time, the trust provided that in the event an individual failed to survive Edwin by 30 days, that gift would be distributed to his or her then-living issue. The restated trust included a no-contest clause.

B.
Beginning in March 1998, Edwin (then 86) became the subject of a series of temporary conservatorships, the last of which expired on July 20, 1998. On August 7, 1998, Edwin became the subject of a permanent conservator of his estate (then valued at about $3.7 million) and person that lasted until his death in July 2002 (at the age of 90). Two trust amendments were executed during this time.

1.
On July 15, 1998, while the subject of a temporary conservatorship, Edwin executed the first amendment to his restated trust. Among other things, the first amendment provided that if, prior to his death, Edwin had filed a petition for the dissolution of his marriage or for a legal separation, all bequests to Elizabeth would lapse. In addition, Edwin deleted the gift to Thomas MacKenzie, divided that portion of his estate equally among Judith, Jennifer, Timothy, and Douglas, and amended the survivorship clause by providing that in the event Douglas predeceased Edwin, Douglas's share would be divided equally among Judith, Jennifer, and Timothy.[1] Edwin designated Wells Fargo Bank as trustee (instead of Elizabeth, as provided in the restated trust). The first amendment included a no-contest clause.

2.
On August 6, 1998 (after the temporary conservatorship expired and before the permanent conservator was appointed), Edwin executed a second amendment to his restated trust. In a "Preamble," he wrote: "I ... set forth my reasons because I anticipate a challenge to the amendment. I have been involved in a legal dispute with my second wife ... Elizabeth Davies since January 1998. The dispute arose when my wife placed me in Brittany House, a locked Alzheimer's unit, and would not allow me to return to my home. She believes she is acting in my best interest; I believe she is not. I do not believe my wife is making health care decisions that are in my best interest. I do not trust the doctors she has selected for me. In addition, my wife took control of my trust property, ... and refused ... to return control of my stock and cash to me. At the recommendation of my attorney and because I did not trust my wife's judgment, I appointed Sherrie Ellman of Ellman and Gladstone to be my Conservator [and decided] that Wells Fargo Bank should serve as my successor Trustee in place of [my wife]. My wife refuses to honor my request to turn my property over to Wells Fargo Bank and to honor my nomination of Sherrie Ellman to serve as my Conservator...."
Edwin also stated that he had been evaluated for legal capacity by three doctors, each of whom opined that he had the capacity to decide who should manage his money and assist him in making medical care decisions; that he had decided to dissolve his marriage for several reasons, including the fact that he no longer trusted *243 her; that Elizabeth had "substantial wealth" of her own and he thus felt no need or desire to give her or her children any part of his property. He went on: "I intend that my entire trust estate pass to my family who are my nephew Douglas Davies and my step-children, Judith Pickett, Jennifer Bitran and Timothy Cameron. I have also made a bequest to ... Bessie Jordan [and have] instructed my attorney ... to file for Dissolution of Marriage....
"Sherrie Ellman and Meryl Gladstone were appointed temporary conservators at my request. Letters of Temporary Conservatorship expired on July 20, 1998. I am under no legal disability and my doctors confirm that I have the capacity to understand the nature of this action I am taking. [¶] I am executing this Second Amendment as Trustor of the Trust. My eyesight is poor so my attorney has read the trust amendments to me."
The second amendment changes the trust by (1) deleting all bequests to Elizabeth so that no part of Edwin's estate passed to her; (2) distributing his estate 22-1/2 percent each to Judith, Jennifer, Timothy, and Douglas, and 10 percent to Bessie Jordan; and (3) expressly providing that, in the event Douglas predeceased Edwin or died within 120 days of Edwin's death, then his share was to be divided equally among Judith, Jennifer, and Timothy (this provision is the source of the present dispute). The second amendment added this no-contest provision:
"The Trustee is authorized to take any actions necessary to effectuate the trust amendments; and any action or proceeding taken by a beneficiary named in the Davies Trust or Elizabeth Davies, or any of her children or grandchildren, to challenge any amendment herein, to assert a community property interest in the trust estate, or to contest the capacity of trustor to amend the trust, whether directly or indirectly, individually or in conjunction with any other beneficiary or any other person, shall constitute a contest and shall be deemed a revocation of any bequest to that beneficiary and such individual shall be treated as if they had predeceased trustor for all respects...."
Edwin filed for divorce in August 1998.

C.
In October 1998, Edwin and his conservators filed a petition to confirm the first and second amendments to Edwin's trust (Prob.Code, §§ 1873, 1874, 2580), alleging that Edwin, then 85, was "in poor health, under tremendous stress as a result of the [pending] divorce proceedings," and that confirmation of the amendments was necessary "so as not to frustrate his testamentary intent." His conservators alleged that they had consulted Edwin's doctors and were confident that Edwin fully understood the amendments at the time they were executed, and that he had the legal capacity to execute the amendments. The petition lists the changed bequests but does not mention the added provision that Douglas had to survive his uncle's death by 120 days. Edwin and his conservator asked the court to find that both the first and second amendments were valid.[2] Notice was given to the beneficiaries, but only the petition was enclosed, not the amendments (which were submitted under seal).
On December 15, 1998, after reviewing the trust, the amendments, and Edwin's medical records, and after a hearing at *244 which Elizabeth's interests were represented but no one appeared for Douglas, the probate court found the allegations of the petition were true and that Edwin had the right to amend his trust. The court declared that both amendments were valid, effective, and enforceable. The amendments were filed under seal.

D.
According to his death certificate, Edwin died at 12:05 a.m. on July 23, 2002. Douglas died 119 calendar days later, on November 19, 2002. Had Edwin died six minutes earlier, or had Douglas (who was then in a hospice and knew he was dying) lived one more day, Douglas would have survived Edwin by 120 days and satisfied the survivorship requirement of the second amendment.
In March 2003, Patricia (Douglas's widow) wrote to Wells Fargo (Edwin's trustee), claiming that Douglas met the survivorship provision of Edwin's trust. Through counsel, Patricia asked Wells Fargo to respond.
In May, Wells Fargo filed a petition in which it asked the probate court for an order ascertaining the beneficiaries and for instructions. The petition valued the trust estate at about $1.8 million, quoted the conditional survivorship provision governing the gift to Douglas, explained Patricia's position, alleged that it is in the best interests of the trust for the court to find that Douglas's gift was terminated by his failure to survive Edwin by 120 days, and asked for that order so the trust could then be distributed to the remaining beneficiaries. With regard to the $100,000 advancement made to Douglas (fn.1, ante), the trustee asked for an order that the amounts need not be repaid.
In response, Patricia filed a "safe harbor" application for a determination that she would not violate the no-contest clauses if she filed objections to the trustee's petition for instructions. (Prob.Code, § 21320.)[3] Patricia claimed her objections would not constitute a contest (1) because she was not a named beneficiary within the meaning of the no-contest clauses (on the theory that she was merely Douglas's surviving spouse and executrix); (2) because her claim that Douglas in fact survived Edwin by 120 days did not challenge the trust or the amendments, only the factual basis for compliance with the survivorship clause;[4] (3) that, under the express provision of Edwin's 1996 trust restatement, the trust became irrevocable (and thus not subject to amendment) in March 1998 when the first temporary conservator was *245 appointed; and (4) that she would claim both amendments were approved by the probate court without sufficient notice to Douglas.[5] With regard to the latter two issues, she said she would urge the court to reform the trust to eliminate the 120-day survivorship requirement as to Douglas, or to declare the first and second amendments invalid.
Timothy (later joined by Judith and Jennifer, who are henceforth included in our references to Timothy except where the context suggests otherwise) opposed Patricia's application. Timothy claimed Douglas did get notice of Edwin's petition to confirm the amendments, and defended the no-contest clauses on the ground that Patricia stood in Douglas's shoes. He supported his opposition with a request for judicial notice that included the trust, both amendments, the petition to confirm the amendments, and a notice of hearing that shows Douglas was served with the notice and the petitionbut not with the amendments.[6]
A hearing was held at which no arguments were presented (the entire discussion was about a missing document) and the matter was taken under submission. On January 6, 2004, the trial court approved Patricia's application without comment, the effect of which was to allow her to file all of her objections to the trustee's petition for instructions. Timothy appeals.[7]

DISCUSSION
The essence of Timothy's claim on this appeal is that any challenge by Patricia is by definition a contest. We reject this overreaching approach, and conclude that Patricia's application was properly granted because her point about the timing of the deaths can be pursued without violating the no-contest clause, but agree with Timothy that Patricia's other claims are, in fact, contests. We remand to the trial court with directions to modify its order accordingly.[8]

*246 A.
"An in terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided there. [Citation.] In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument. [Citation.] [¶] No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator. [Citations.] Because a no contest clause results in a forfeiture, however, a court is required to strictly construe it and may not extend it beyond what was plainly the testator's intent. [Citations.]
"`Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.] `[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court `must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (Burch v. George (1994) 7 Cal.4th 246, 254-255, 27 Cal.Rptr.2d 165, 866 P.2d 92.) Our review of the trial court's decision is de novo. (Id. at p. 254, 27 Cal.Rptr.2d 165, 866 P.2d 92; see also Estate of Strader (2003) 107 Cal. App.4th 996, 1002-1006, 132 Cal.Rptr.2d 649; Estate of Coplan (2004) 123 Cal. App.4th 1384, 1388-1390, 20 Cal.Rptr.3d 686.)
For its part, section 21320 provides a safe harbor for beneficiaries who seek a judicial determination whether a proposed legal challenge would be a contest, and that is the only issue to be decided when such an application is made. (Genger v. Delsol, supra, 56 Cal.App.4th at pp. 1428-1429, 66 Cal.Rptr.2d 527.) As a general rule, the decision about whether the beneficiary's proposed action would be a will contest may not involve a determination of the merits of the action itself, a rule that "makes sense" because the summary safe harbor procedure could otherwise "be used to allow the very form of challenge and protracted litigation the testator sought to prevent." (Estate of Ferber (1998) 66 Cal. App.4th 244, 251, 77 Cal.Rptr.2d 774.)[9]
With these principles to guide us, we must determine whether the filing of Patricia's proposed objections would constitute a contest within the meaning of the no-contest clauses.

B.
We begin by disposing of the easy issue first. As Timothy contends, Patricia (as Douglas's surviving spouse and executrix) does indeed stand in Douglas's shoes and she cannot escape the no-contest clause on the ground she personally is not a named beneficiary. (Code Civ. Proc., § 377.30; Genger v. Delsol, supra, 56 Cal. App.4th at pp. 1423-1424, 66 Cal.Rptr.2d *247 527; cf. Basore v. Metropolitan Trust Co. (1951) 105 Cal.App.2d 834, 837, 234 P.2d 296.)

C.
In his opening brief, Timothy does not address Patricia's claim that Douglas did not, in fact, die within 120 days of Edwin's death, or that the calculation of days in this context might be made by some means other than the standard 24-hour clock (perhaps taking into account the time difference resulting from the fact that Edwin died in California, Douglas in Vermont). Whether Patricia's claim is that Edwin died at some point before midnight on July 22, 2002, and that the death certificate (which states the time of death as 12:05 a.m. on July 23) is not dispositive, or that some other time calculation should be made, the point is that her position is an unequivocal acquiescence in the condition Edwin imposed on the bequest to Douglas and, as such, plainly not a challenge to the trust or either of its amendments. (Burch v. George, supra, 7 Cal.4th at pp. 254-255, 27 Cal.Rptr.2d 165, 866 P.2d 92.)
Because Timothy offers no argument or authority to suggest a different approach, we construe the no-contest clauses strictly to avoid forfeiture, consider Edwin's apparent intent, and conclude (as did the trial court) that Patricia ought to have an opportunity to establish by extrinsic evidence that Douglas in fact survived Edwin by 120 days. (Burch v. George, supra, 7 Cal.4th at pp. 254-255, 27 Cal.Rptr.2d 165, 866 P.2d 92; Wells Fargo Bank v. Marshall (1993) 20 Cal.App.4th 447, 453, 24 Cal.Rptr.2d 507.) Of course, this result is entirely consistent with Edwin's intent as expressed in the second amendment, where he provided that Douglas was to receive the same gift as Timothy, Judith, and Jennifer, and that Douglas's gift was to lapse only if he failed to survive Edwin by 120 days. It also appears that the contest most feared by Edwin was one pursued by Elizabeth and her sons, not a claim brought by his beloved nephew's widow because Edwin died five minutes too late or Douglas one day too soon. (Genger v. Delsol, supra, 56 Cal.App.4th at pp. 1424-1426, 66 Cal.Rptr.2d 527 [extrinsic evidence admissible to determine whether the no-contest clause was intended to apply to prospective contestant]; Estate of Kaila (2001) 94 Cal.App.4th 1122, 1130-1135, 114 Cal.Rptr.2d 865 [extrinsic evidence admissible in safe harbor proceedings to interpret no contest clause].)[10]

D.
Timothy contends Patricia's proposed challenges (1) to the notice given at the time the amendments were confirmed by the probate court, and (2) to the validity of the amendments on the ground that Edwin was the subject of a conservatorship at the time the first amendment was made, are tantamount to indirect attacks on the amendments. We agree.
Patricia's challenge to the validity of the order approving the first and second amendments on either of these grounds, if successful, would either (1) unravel Edwin's estate plan completely by destroying the amendments in their entirety, or (2) require a reformation of the second *248 amendment to delete the 120 days survivorship clause which would, by definition, constitute a contest.[11] As explained in Genger v. Delsol, supra, 56 Cal.App.4th at pages 1420-1423, 66 Cal.Rptr.2d 527, a "contest" is not confined to a direct attack on a will or trust instrument, but may include a separate legal proceeding that would thwart or nullify or unravel the testator's expressed wishes. (See also Burch v. George, supra, 7 Cal.4th at pp. 260-261, 27 Cal.Rptr.2d 165, 866 P.2d 92.)
For this reason, Patricia cannot pursue her challenge to the sufficiency of the notice given to Douglas with regard to the petition to confirm the amendments, or her claim that the trust became irrevocable (and thus not subject to amendment) at the moment the first temporary conservator was appointed.[12]

DISPOSITION
The safe harbor order allowing Patricia Davies to file her objections to the trustee's petition for instructions is affirmed, and the cause is remanded to the probate court with directions to modify its order to limit the objections to those discussed in Part C of the legal discussion of this opinion. The parties are to pay their own costs of this appeal.
We concur: SPENCER, P.J., and SUZUKAWA, J.[*]
NOTES
[1] About two weeks before this amendment was executed, Douglas received a court-approved advance distribution of $50,000. In April 2000, Douglas (then recently diagnosed with cancer) received another court-approved $50,000 advance to help with his medical bills.
[2] In a supporting declaration executed by Edwin on October 2, 1998, he said it was his intent to disinherit Elizabeth and Thomas MacKenzie, and that he understood that, under the amendments, his trust and probate estate would pass to Judith, Jennifer, Timothy, Douglas, and Bessie Jordan.
[3] Subsequent undesignated section references are to the Probate Code. Section 21320, subdivision (a), provides that "[i]f an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary ... would be a contest within the terms of the no contest clause." Subdivision (b) of section 21320 provides that a no contest clause is not enforceable against a beneficiary acting within the scope of subdivision (a). Subdivision (c) provides that an application under subdivision (a) cannot be made "if a determination of the merits of the motion, petition, or other act by the beneficiary is required."
[4] Patricia points out that Edwin was seen alive on July 22, 2002, and that his death certificate says he died at just five minutes past midnight on July 23. Douglas died at 6:42 p.m. on November 19. "Under these circumstances [says Patricia], if the days are counted beginning immediately after Edwin's death on July 23, 2002, and ending on November 19, 2002, Doug[las] did in fact survive Edwin by 120 days." She says she believes "it is highly likely that the actual time of Edwin's death was some time on July 22," but that discovery would be required to make that determination.
[5] Douglas was ill for some time, and became seriously ill in 2002. According to Patricia, arrangements were made for hospice care, with Douglas's agreement that "he would be treated on a palliative basis only and not on an active basis. As a result, on Tuesday, November 19, 2002, he drifted in and out of consciousness and ultimately died after 6:00 p.m. on that day." Had Douglas had a reason to prolong his life, the medical professionals who treated him "are absolutely confident that even very benign and non-aggressive measures could have been taken to prolong [his] life so that he could have easily survived (beyond the 120 days) by at least several days and, very likely, for a more extended period." Of course, this argument assumes its own conclusion that the purpose of the notice was to inform Douglas of the details of the proposed amendment, rather than simply to inform him of his right to contest Edwin's capacity to make any amendment at alla conclusion that is unsupported by any authority.
[6] Documents judicially noticed by the trial court are properly noticed by the reviewing court. (Evid.Code, § 459.)
[7] The order is appealable. (§ 1304, subd. (d); Genger v. Delsol (1997) 56 Cal.App.4th 1410, 1427, fn. 13, 66 Cal.Rptr.2d 527; Hermanson v. Hermanson (2003) 108 Cal.App.4th 441, 133 Cal.Rptr.2d 486; Estate of Hoffman (2002) 97 Cal.App.4th 1436, 119 Cal.Rptr.2d 248.)
[8] Timothy's briefs fail to address some of the claims asserted by Patricia in the trial court (including the issue about the time of Edwin's death), and he offers very little relevant authority to support his position. At times, he seems to suggest that Patricia's safe harbor application is itself a violation of the no-contest clause, but he offers no authority at all for this argument. In his reply brief, he suggests the acceptance or rejection of Patricia's safe harbor application is an all or nothing proposition. We know of no such authority and Timothy offers none, and we see no reason for such a rule. What the trial court should have done is what we are doingexamining Patricia's proposed objections to the trustee's petition and determining which, if any, can be filed without a forfeiture. (See Genger v. Delsol, supra, 56 Cal.App.4th 1410, 66 Cal. Rptr.2d 527; Graham v. Lenzi (1995) 37 Cal. App.4th 248, 259, fn. 10, 43 Cal.Rptr.2d 407.)
[9] If a beneficiary contends a provision in a will violates public policy, that issue may be determined by a safe harbor petitionbecause any other rule would make a no-contest clause virtually impenetrable to public policy attacks. (Estate of Ferber, supra, 66 Cal. App.4th at p. 251, 77 Cal.Rptr.2d 774.)
[10] Although we do not know the reason for the 120-day survivorship condition, its existence does not necessarily suggest Edwin intended that Patricia take nothing in the event Douglas predeceased Edwin. It does not appear that Douglas was ill in 1998 when the second amendment was executed or, if he was ill, that anyone knew he was dying. What we do know is that he was diagnosed in 2000, shortly before he received the second $50,000 advance.
[11] Patricia's discussion about the propriety of reformation to carry out a testator's intent is based on cases that do not address the question of whether the request for reformation violates a no-contest clause. We note that she does not suggest the amendments were a product of fraud, menace, or duress by anyone vis-à-vis Edwin. (Cf. Graham v. Lenzi, supra, (1995) 37 Cal.App.4th at p. 256, 43 Cal.Rptr.2d 407.) Because the issue was not briefed, we do not address Patricia's claim (raised for the first time at oral argument) that her position vis-à-vis notice is supported by subdivision (b)(1) of section 21305.
[12] For what it is worth, we note that Douglas knew about the addition of the survivorship provision. The second amendment, which added the survivorship provision, was confirmed in 1998. In April 2000, before Douglas received the second $50,000 advancement to help pay his medical bills, Edwin (through his conservators) petitioned the court for authorization to make the advance. The petition for authorization explained (by stating that Bessie Jordan's consent was not necessary because she would not benefit from the survivorship clause) that Timothy, Jennifer, and Judith were asked to consent to the advance (which they did) because they would receive the share of the trust attributable to Douglas if he predeceased Edwinand Douglas signed a waiver of notice of the hearing on that petition in which he stated that he had read the petition. And insofar as the incapacity claim is concerned, Edwin was not the subject of a conservatorship on the date the second amendment was executed.
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.