Filed 7/8/16  Heathman v. Lizer CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GINA MARTIN HEATHMAN, | B263943 |
| Petitioner and Respondent, | (Los Angeles County Super. Ct. No. BP125660) |
| v. | |
| LAURA LIZER et al., as Co-Trustees, etc. | |
| Objectors and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maria E. Stratton, Judge.  Affirmed.

Loeb & Loeb and David C. Nelson for Objectors and Appellants.

Hoffman, Sabban & Watenmaker, Geraldine A. Wyle and Jeryll S. Cohen for Petitioner and Respondent.

_____

## INTRODUCTION

Appellants Laura Lizer and Joel Smith are co-trustees of the Dean Martin Family Trust (the Trust). Respondent Gina Martin Heathman is one of the Trust's current income beneficiaries. Lizer and Smith (the Trustees) appeal from a trial court order determining that Heathman's proposed petition to modify the trustee compensation provision of the Trust would not trigger the Trust's no contest clause.[1]

The Trustees are currently paid 1 percent of the average net value of the Trust's principal, charged equally to principal and income on an annual basis. Due to significant increases in the value of certain Trust assets, the Trustees' compensation under the current provision has mushroomed from approximately $133,867 in 1995, when Martin settled the Trust, to $811,903.44 in 2013. Heathman asserts this increase has substantially reduced the net income distributable to the nine income beneficiaries, while also consuming a considerable portion of the principal that should be preserved for future beneficiaries. Heathman's proposed petition seeks to modify the Trust, with the consent of all current beneficiaries, to limit the Trustees' compensation to no more than the market rate charged by corporate trustees managing similar trust estates.

Probate Code[2] section 15409, subdivision (a), authorizes the court to modify an administrative trust provision if, "owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust." Section 15403 authorizes the beneficiaries to compel modification of trust provision by unanimous consent, so long as the court, in its discretion, does not determine the modification would frustrate a material purpose of the trust. Heathman maintains the Trust's primary purpose

---

[1]     The court rendered the order pursuant to former Probate Code section 21320. As discussed in greater detail below, former section 21320 allows a beneficiary under a testamentary instrument that contains a no contest clause to apply to the court for an advance determination of whether the beneficiary's proposed action would constitute a contest. These are customarily referred to as "safe harbor" applications.

[2]     All further statutory references are to the Probate Code unless otherwise indicated.

2

is to benefit the beneficiaries—not the Trustees, and as such the no contest clause should not be interpreted so as to preclude the beneficiaries, on pain of disinheritance, from seeking an equitable modification of the trustee compensation provision. We agree that the no contest clause cannot be interpreted to effect a forfeiture where such a result plainly conflicts with the policy to allow modification expressed in sections 15403 and 15409. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

1. *The Pertinent Trust Provisions*

Dean Martin, the settlor, executed the Trust on December 14, 1995 (the Trust).[3] Martin died on December 25, 1995, on which date the Trust became irrevocable.

Heathman is one of Martin's daughters and a current income beneficiary. The nine current income beneficiaries (including Heathman) are entitled to all net income generated by the Trust. Upon termination of the Trust, the principal and all accumulated income are to be distributed to future beneficiaries, as determined according to the Trust's detailed dispositive provisions.

The Trust contains the following no contest clause:

> "If any devisee, legatee or beneficiary under this Trust, or any legal heir of mine or person claiming under any of them, shall contest this Trust or my Will or attack or seek to impair or invalidate any of its provisions, or conspire with or voluntarily assist anyone attempting to do any of these things, in that event I specifically disinherit each such person, and all such legacies, bequests devises and interest given under this Trust or my Will to that person shall be forfeited, and shall augment proportionately the shares of my estate going under this Trust to, or in trust for, such of my devisees, legatees and beneficiaries as shall not have participated in such acts or proceedings."

---

[3]     Martin executed a pour-over will the same day.

The Trust vests the Trustees with a wide range of powers to manage the Trust's assets and income. In exercising those powers, the Trust mandates that "the Trustees shall act in a manner that is reasonable and equitable in view of the interests of the beneficiaries, and in a manner in which persons of ordinary prudence diligence, discretion, and judgment would act in the management of their own affairs."

As for the Trustees' compensation, the Trust states:

> "Without court order, the compensation to all Trustees, in the aggregate, shall be determined as follows: (1) annual compensation for all ordinary services rendered to each of the trusts created hereunder in an amount equal to one percent (1%) of the average net value of the principal of each trust during each year; and (2) if the Trustees shall render extraordinary services during any year, they shall receive, in addition, reasonable compensation for any extraordinary services rendered and such compensation shall be charged to the particular trust or trusts for which such extraordinary services were rendered."

2. *The Safe Harbor Application*

On October 9, 2014, Heathman filed the safe harbor application at issue in this appeal. Heathman's verified application explained that since 1995, when Martin settled the Trust, the value of the Trust's assets had increased more than seven-fold, due primarily to an increase in the value of assets managed by paid investment advisors other than the Trustees, resulting in a corresponding increase in the Trustees' annual compensation.[4] According to the Trustees' records, the value of the Trust at the time of Martin's death was $11,386,639.86, resulting in an annual Trustee fee of approximately $113,866. As of 2014, the Trustees' records showed the Trust's value had increased to

---

[4] The Trust's most valuable asset, an interest in a limited partnership valued at over $56 million, accounted for the most significant increase due to the appreciation of the partnership's real estate holdings. The proposed petition asserted that this asset required "virtually no direct services of the [T]rustees, [as it] is managed by partnership agents who receive separate compensation for their management."

4

$81,230,672.50, which, under the 1 percent compensation formula, would yield a fee of roughly $812,307. The application averred that, in 2013, the Trustees paid themselves a total of $811,903.44, charged equally to principal and income, consisting of $774,325 for ordinary services and $37,578.44 for administrative fees.

By comparison, Heathman declared that a corporate trustee with more than $97.5 billion in assets under supervision had informed her that it would charge a trustee fee of approximately $225,000 to administer the Trust, based on the Trust's size and asset composition.

Heathman also declared that, for 2013, the Trust's reported income distributable to each beneficiary was only a fraction of the amount paid to the Trustees pursuant to the 1 percent formula.

Based on those verified facts, Heathman, with the consent of all other current beneficiaries, proposed to file a petition to "delete" the Trust's current trustee compensation provision, and replace it with the following:

> "The Trustee shall be entitled to reasonable compensation for services rendered as Trustee. Reasonable compensation shall be based upon the qualifications of the Trustee; however, compensation of the Trustee shall in no event exceed the average of the fees charged by corporate Trustees in the county of Los Angeles that have assets under supervision or under management in excess of $50 billion. Additionally, if there is more than one Trustee serving, then each Trustee shall be entitled to reasonable compensation, but the aggregate paid to the Trustees shall not exceed the amount of compensation that would have been reasonable had there been only one Trustee. Any Trustee who is an attorney, accountant or other professional service provider may render services to this Trust and be paid for those services without reducing the Trustee's fees to which he or she would otherwise be entitled, provided that the Trustee shall be additionally compensated only for services other than those services the Trustee renders in his, her or its capacity as Trustee."

5

The safe harbor application sought a determination pursuant to former section 21320 that the proposed petition would not trigger the Trust's no contest clause. Heathman explained that the proposed petition, attached as an exhibit to the application, would be made pursuant to sections 15403 and 15409, subdivision (a). The proposed petition, to be made with the consent of all beneficiaries, argued the significant increase in Trust assets, without a proportionate increase in Trust income, had not been anticipated by Martin, and that continuing under the 1 percent trustee compensation formula would defeat or substantially impair the Trust's primary purpose—to benefit settlor's family members, the Trust beneficiaries.

After hearing argument on Heathman's safe harbor application and taking the matter under submission, the trial court issued an order granting the application. The Trustees now appeal that ruling.

## DISCUSSION

1. *No Contest Clauses; Applicable Law and Standard of Review*

"An in terrorem or no contest clause in a trust instrument 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' [Citation.] No contest clauses, whether in wills or trusts, have long been held valid in California." (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422 (*Donkin*).)

The court's interpretation of a no contest clause and application of the clause to a proposed action is necessarily informed by competing policy interests. On the one hand, "[s]uch clauses promote the public policies of honoring the intent of the donor and discouraging litigation by persons whose expectations are frustrated by the donative scheme of the instrument." (*Donkin, supra,* 58 Cal.4th at p. 422.) On the other hand, these interests are "[i]n tension with . . . the policy interests of avoiding forfeitures and promoting full access of the courts to all relevant information concerning the validity and effect of a will, trust, or other instrument." (*Ibid.*) "In light of these opposing interests, the common law [and statutory law] in California recognized the enforceability of no

6

contest clauses, albeit strictly construed, 'so long as the condition was not prohibited by some law or opposed to public policy.' " (*Ibid.*; see also *id.* at pp. 422-426 [tracing development of California law regarding no contest clauses through to present statutory scheme].)

Consistent with these principles, determining " '[w]hether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.' [Citations.] '[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' " (*Burch v. George* (1994) 7 Cal.4th 246, 254-255.)

The instant appeal challenges the trial court's determination, pursuant to former section 21320, that Heathman's proposed petition to modify the trustee compensation provision would not constitute a contest under the Trust's no contest clause.[5] Former section 21320 provides " 'a safe harbor for beneficiaries who seek a judicial

---

[5] Because the Trust became irrevocable prior to January 1, 2001, the no contest clause provisions of former sections 21300 through 21322, as well as the common law, govern our resolution of this appeal. (See § 21315; *Donkin, supra,* 58 Cal.4th at pp. 426-427; *Fazzi v. Klein* (2010) 190 Cal.App.4th 1280, 1283, fn. 2.)

Former section 21320 provides in relevant part: "(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary, . . . would be a contest within the terms of the no contest clause. [¶] (b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) is limited to the procedure and purpose described in subdivision (a). [¶] (c) A determination under this section of whether a proposed motion, petition, or other act by the beneficiary violates a no [contest] clause may not be made if a determination of the merits of the motion, petition, or other act by the beneficiary is required."

7

determination whether a proposed legal challenge would be a contest, and that is the only issue to be decided when such an application is made. [Citation.] As a general rule, the decision about whether the beneficiary's proposed action would be a will contest may not involve a determination of the merits of the action itself . . . .' " (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1207-1208 (*Hearst*).) "This makes sense. Otherwise, the summary procedure could be used to allow the very form of challenge and protracted litigation the testator sought to prevent." (*Estate of Ferber* (1998) 66 Cal.App.4th 244, 251 (*Ferber*).)

In reviewing the trial court's ruling that the proposed petition would not constitute a contest, we apply a de novo standard. (*Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1600; *Hearst, supra,* 145 Cal.App.4th at p. 1209.) In making this determination, our review is confined to the four corners of the proposed petition. (See *Hearst,* at p. 1209, fn. 11.)

2.      *The Proposed Petition to Modify the Trustee Compensation Provision Is Not a Prohibited Contest*

The Trustees' argument on appeal is commendably straightforward. They observe that the Trust's no contest, by its plain language, applies to "any devisee, legatee or beneficiary under this Trust . . . [who] shall contest this Trust or my Will or attack or seek to impair or invalidate any of its provisions." They then point out that the trustee compensation provision is among the Trust's "provisions," and that by requesting to delete and replace the trustee compensation provision, the proposed petition seeks to "impair or invalidate" a provision of the Trust. Inasmuch as the language of the no contest clause must govern its application, the Trustees argue the foregoing analysis establishes that the proposed petition constitutes a prohibited contest.

As discussed, California law recognizes the enforceability of no contest clauses, but only " 'so long as the condition [is] not prohibited by some law or opposed to public policy.' " (*Donkin, supra,* 58 Cal.4th at p. 422.) Though the Trustees' argument is compelling in its simplicity, we find it overlooks an important public policy that supports the trial court's ruling that Heathman's proposed petition is not a contest.

8

Section 15409, subdivision (a) authorizes the trial court, "[o]n petition by a trustee or beneficiary, [to] modify the administrative or dispositive provisions of the trust or terminate the trust if, owing to circumstances not known to the settlor and not anticipated by the settlor, the continuation of the trust under its terms would defeat or substantially impair the accomplishment of the purposes of the trust." This statutory authorization has its roots in the sound policy of advancing the settlor's implicit intent to accomplish the trust's primary objectives in the face of changed circumstances. Thus, even prior to enactment of the statute, courts of equity had long exercised the power to "modify the terms of [a] trust to accomplish the real intent and purpose of the trustors" where, due to unforeseen circumstances, "the benefits and advantages which the trustors desired to confer upon the beneficiaries would not accrue to them by 'a slavish adherence to the terms of the trust.' " (*Adams v. Cook* (1940) 15 Cal.2d 352, 361.)

Heathman's proposed petition asks the court to exercise its authority under section 15409, subdivision (a) to modify the trustee compensation provision to account for what Heathman contends is an unforeseen changed circumstance that has caused the provision to substantially impair the accomplishment of the Trust's primary purpose—to benefit the beneficiaries.[6] With respect to that purpose, the court in *Estate of Bullock* recognized that

---

[6] As discussed, that changed circumstance, according to the Trustees' financial reports, is a seven-fold increase in the principal value the Trust's assets, without an accompanying proportional increase in the income generated by those assets. When the one percent trustee compensation provision is applied to the increased principal value, the Trustees' reports show that each beneficiary now receives only a fraction of the amount paid to the Trustees. Heathman and the Trustees dispute whether this changed circumstance was "not anticipated" by Martin when he settled the Trust, as is required to warrant modification under section 15409. This is a merits issue that we cannot (see former § 21320, subd. (c)) and need not address to find the no contest clause does not apply to the proposed petition. (See *Balian v. Balian* (2009) 179 Cal.App.4th 1505, 1510 [concluding proposed petition under section 15409 to set aside "special needs" provision was not a prohibited contest, notwithstanding trustees' argument that probate court was required to make a determination of the merits as to what settlor understood about beneficiary's needs at the time the trust was created]; see also *Ferber, supra,* 66 Cal.App.4th at p. 251 ["If the beneficiary argues a proposed action would not violate the no contest clause because the clause, or a purportedly applicable provision of it,

a no contest clause could not be interpreted, consistent with public policy, to prevent beneficiaries from petitioning the court to instruct the trustee concerning their right of distribution, observing, "Ordinarily *trusts are made for the protection of the beneficiaries* who may or may not be sufficiently informed and vigilant to manage large sums of money and conversely it would seem that *trusts are not made for the benefit of trustees.*" (*Estate of Bullock* (1968) 264 Cal.App.2d 197, 201, italics added; see also *Ferber, supra,* 66 Cal.App.4th at pp. 253-255 [citing principle that trusts are created to protect beneficiaries, not for the benefit of trustees, and holding no contest clause was invalid to extent it purported to preclude beneficiaries from bringing a non-frivolous petition to remove the will's executor].) In view of that purpose, Heathman contends the no contest clause cannot be interpreted to preclude her from petitioning the court for the modification authorized by section 15409, subdivision (a). We agree.

The Trustees counter that Martin's intent, as expressed in the trustee compensation provision, must be respected. They contend there is no policy authorizing the trial court to defy that expressed intent, even supposing a changed circumstance that might cause the provision to operate to the disproportionate detriment of the beneficiaries' interests. To support this charge, the Trustees principally rely on *Estate of Bodger*, where the court held, "The testator has the right to specify the compensation to be paid a trustee performing services on his behalf and if he does so it is not within the power of the court to change, alter or modify such provisions, or to substitute its predilection for the expressed instruction of the testator." (*Estate of Bodger* (1955) 130 Cal.App.2d 416, 424.) The Trustees' reliance is misplaced, as the *Estate of Bodger* court's holding has been abrogated by the enactment of section 15680, which now authorizes the court, upon proper showing, to "fix or allow greater or lesser [trustee] compensation than could be allowed under the terms of the trust . . . [¶] . . . [¶] (2) Where the compensation in accordance with the terms of the trust would be inequitable or unreasonably low or high."

---

violates public policy, and that determination can be made as a matter of law without reference to any factual matters, the determination may be made in a section 21320 proceeding."].)

10

(§ 15680, subd. (b)(2).)[7]  Contrary to the Trustees' suggestion that the compensation provision cannot be modified to address changed circumstances, section 15680, like section 15409, reflects the Legislature's sound commitment to a policy favoring court supervision of trust administration to ensure the interests of beneficiaries are protected. (See also *Estate of Bullock, supra,* 264 Cal.App.2d at p. 201 ["There can be no question that there is a well-recognized public interest that estates of decedents be administered in such a manner . . .  calculated to promote faith in the judicial system"].)

The same logic applies with respect to section 15403.  Section 15403 permits the beneficiaries of an irrevocable trust, by unanimous consent, to "compel modification or termination of the trust upon petition to the court," unless the court, in its discretion, determines "continuance of the trust [without modification] is necessary to carry out a material purpose of the trust."  (§ 15403, subds. (a) & (b).)  The Law Revision Commission Comments to section 15403 note that the statute is drawn from section 337 of the Restatement (Second) of Trusts, which explains:  "If all of the beneficiaries of a trust wish to terminate it, the trust will not be continued merely in order to enable the trustee to obtain further compensation.  The trustee as such is not a beneficiary of the trust."  (Rest.2d Trusts, § 337, com. b.)  Consistent with this principle, we agree with the trial court that a petition brought for the purpose of advancing the settlor's intent to

---

[7]     The *Estate of Bodger* court premised its holding on former Civil Code section 2274, which provided, " 'Except as provided in section 1122 of the Probate Code, when a declaration of trust is silent upon the subject of compensation, the trustee is entitled to the same compensation as an executor.  If it specifies the amount of his compensation, he is entitled to the amount thus specified and no more.  If it directs that he shall be allowed a compensation, but does not specify the rate or amount, he is entitled to such compensation as may be reasonable under the circumstances. If there are two or more trustees the compensation shall be apportioned among the trustees according to the services rendered by them respectively.' "  (*Estate of Bodger, supra,* 130 Cal.App.2d at p. 422, quoting former Civ. Code, § 2274.)  Former Civil Code section 2274 was repealed in 1986 and replaced by section 15680, which restated the sentence entitling the trustee to compensation in accordance with the trust, but "ma[de] clear that the court could reduce the trustee's compensation when appropriate."  (18 Cal. Law Revision Com. Rep. (1986) p. 1363.)

11

benefit *all* the trust's beneficiaries cannot be regarded as a contest, notwithstanding that it will reduce the fees paid to the trustee. Moreover, because the statute requires *unanimous* consent by the beneficiaries, a section 15403 petition is unlikely to run afoul of one of the major purposes of a no contest clause— discouraging litigation. (See *Donkin, supra,* 58 Cal.4th at p. 422.)

The Trustees contend the no contest clause, by its plain terms, precludes Heathman and the other beneficiaries from petitioning the court to modify the trustee compensation provision on pain of disinheritance. In view of the public policy reflected in sections 15403 and 15409, and the general recognition that trusts are created by settlors to benefit their beneficiaries—not their trustees, we conclude that such an interpretation is opposed to public policy and that the no contest clause, so interpreted, could not be enforced. (*Ferber, supra,* 66 Cal.App.4th at pp. 253-255.) The trial court did not err in concluding the proposed petition would not trigger the no contest clause.

**DISPOSITION**

The order is affirmed.  Heathman is entitled to her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HOGUE, J.[*]

We concur:

EDMON, P. J.

LAVIN, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.