PETER FABBI, Appellant, v. FIRST NATIONAL BANK OF NEVADA, a Banking Corporation, ALMA M. HOLMSHAW AND DAN VASILOVICH, Respondents.

No. 3417

November 8, 1944                      153 P. (2d) 122.

406.

*Lowell Daniels,* of Tonopah, and *H. R. Cooke,* of Reno, for Appellants.

*Thatcher & Woodburn,* of Reno, for Respondents.

## OPINION

By the Court, DUCKER, J.:

This is an appeal by plaintiff from an order of the Second judicial district court of the State of Nevada in and for the county of Washoe, made and entered on May 19, 1944, denying his motion for a change of place of trial.

As the respondents' brief contain a fair summary of the facts and allegations of the opposing affidavits, we will, for convenience, adopt it in the main, as a statement of the case, making such amendments as the record may suggest, and omitting allegations we deem immaterial.

The action was originally commenced by the plaintiff in the Fifth judicial district court in and for Esmeralda County in June of 1942. The action grew out of an alleged injury received by the plaintiff in an auto collision which occurred in June of 1940 at a point near the town of Blair Junction in Esmeralda County, Nevada. The defendant, Dan Vasilovich, was the driver of the car which collided with that belonging to the plaintiff. The residence of Dan Vasilovich, as well as that of the other individual defendant, Alma M. Holmshaw, was in Reno, Washoe County, Nevada. The corporation defendant, the First National Bank of Nevada, a national banking corporation, had its principal office and place of business also in Reno.

On July 6, 1942, the defendants filed in said Fifth judicial district court, a notice of motion to change the venue of the case to Washoe County, Nevada, on the ground that such county was the residence of the individual defendants and of the defendant banking corporation, and that Washoe County was therefore the proper county for the trial. Accompanying this notice of motion was a demand for a change of venue. On July 21, 1942, the attorneys for plaintiff and defendants entered into a stipulation that the action might be transferred from Esmeralda County to Washoe County, and that the Esmeralda district court might make an order to that effect. Accordingly, such order was entered and the case thereafter docketed in said Second judicial district court, department No. 1, thereof. Thereafter, on the 22d of October, 1942, answers were filed on behalf of defendants. Thereafter depositions were taken of witnesses on behalf of the defendants, and also one deposition taken on the part of plaintiff, and were filed in the action. On March 20, 1944, the plaintiff filed in the action a notice of motion for a change of place of trial to Tonopah, Nye County, Nevada, in said Fifth judicial district court upon the grounds that the convenience of the witnesses and the ends of justice would be promoted by such change. This notice was accompanied by an affidavit of plaintiff in support thereof. This affidavit stated the names of six witnesses expected to be called by the plaintiff, all of whom resided at Tonopah, Nevada. The first of these witnesses mentioned in the affidavit was Dr. R. R. Craig, who had treated the plaintiff for his injuries in the accident. The affidavit states in detail what the witness will testify to in that regard. The second witness was Fred Steen, connected with the Tonopah Mines Hospital, who, plaintiff alleged, would testify to the cost of his hospitalization. The third witness mentioned in the affidavit was C. O. Bingham, an automobile repair man, who, plaintiff alleged, would testify as to the condition

of plaintiff's automobile, before and after the accident. The fourth mentioned was Pete Beko, who was expected to testify as to the position of plaintiff's car at the place of the accident, and its damaged condition, and the condition of the highway at that point. The fifth witness was Dan Johnson, who plaintiff expected to call as a witness on the trial, as to the condition of the highway at and near the point of accident. The sixth witness mentioned by plaintiff was Claude Pellando, who plaintiff expected to testify as to plaintiff's physical condition both prior to and after the accident, and to testify as to the work performed by plaintiff as a baker prior to the accident. Plaintiff further alleged that he had been advised by his attorneys that he could not safely proceed to trial without the testimony of each of said witnesses.

He further alleged that the accident happened near Tonopah and that it would be desirable that a view of the locus in quo be had by the court and the jury (if a jury be had) ; that he was a man of limited means and could not afford to pay the expenses of said witnesses to go from Tonopah to Reno and return (even if they could be induced to attend at Reno) together with living expenses at Reno for three or four days, and compensation for their loss of time, all of which would aggregate to the estimated amount of $450 or $500; that the cost of taking their testimony by depositions would be expensive and extremely burdensome upon plaintiff; that some of the testimony of witnesses might be only by way of rebuttal, and plaintiff could not anticipate just what testimony he would be required to rebut; and that he also expected to have his son and daughter attend the trial and testify as to divers issues of fact made by the pleadings.

The affidavit also set forth that Dr. R. R. Craig had charge of the Tonopah Mines Hospital, which was usually full of patients, and it would be extremely difficult for Dr. Craig to absent himself from Tonopah.

After noticing this motion and before the hearing thereon the following order was entered in the action on May 4, 1944:

"Upon motion of counsel for plaintiff, attorneys for defendant consenting thereto, it is ordered that the above entitled action be and hereby is assigned to the Honorable A. J. Maestretti, Department No. 2 of this court, to hear, try and determine.

"Wm. McKnight, District Judge."

Thereafter plaintiff called up his motion for a change of venue, in said department No. 2, and on the hearing introduced the said affidavit of Peter Fabbi. In opposition to the motion the defendants introduced the affidavit of Paul L. Dorman, Vice President and Trust Officer of the First National Bank, who made the affidavit on behalf of the bank and the other defendants in the action. The affidavit set forth that at the date of the accident the car driven by Vasilovich had been held by defendants Holmshaw and First National Bank, as executors of the estate of Harry F. Holmshaw, deceased; that all the records pertaining to the estate and to defendants Holmshaw and First National Bank were kept in Reno, Washoe County, Nevada; that defendants did not know what evidence plaintiff would produce to attempt to connect defendants Holmshaw and First National Bank with the accident mentioned in plaintiff's complaint, because it nowhere alleges that Vasilovich was employed by the defendants, or was acting for them or was within the course and scope of any employment at the time of the alleged accident, but simply charges all of the defendants with "operating the car." The affidavit of Dorman further set out that in order for the defendants to properly defend the action, each of the individual defendants would have to be present at the trial, and the First National Bank would be required to have a representative at the trial. It further alleged that in order to properly defend the action the defendants would have to have a physical

examination made of the plaintiff by a qualified physician; and would have to have such physician testify at the trial; that if the trial was changed to Tonopah, Nevada, the defendants would be required to pay the expenses of a physician from Reno to Tonopah and return, and his expenses while in Tonopah at the trial of the action; that the defendant Alma Holmshaw resided in Reno, and in order to be present at the trial, if the same were held in Tonopah, she would be required to pay her expenses from Reno to Tonopah and return and her expenses while at Tonopah; that defendant Dan Vasilovich formerly resided in Reno, but is now in the armed forces of the United States; that it is absolutely essential to defendants' case that Vasilovich be present at the trial of the action; that at the time of the affidavit he was stationed at Oceanside, California; that if he is able to attend said trial at all, in person, it is very doubtful whether he could secure a long enough furlough to attend such a trial at Tonopah; that more time would be required in travelling from Oceanside to Tonopah than if the trial were held in Reno; that if he was unable to attend either at Tonopah or at Reno it would be necessary that a continuance be asked under the provisions of the Soldiers' and Sailors' Relief Act, 50 U. S. C. A. Appendix sec. 501 et seq., which would require a motion and the travel expense of counsel from Reno to Tonopah for hearing the motion; that Vasilovich, if present at the trial, would testify that he drove the automobile mentioned with due care and that the collision mentioned in plaintiff's complaint, and any injuries sustained by reason thereof, were caused by the negligence of the plaintiff, Peter Fabbi, in stopping his automobile on the main traveled portion of the highway and in attempting to make repairs or adjustments in the dark while standing on the highway; that plaintiff had failed to display any lights on his car or give any warning signal of the presence of the car on the highway. He would further testify that there was

adequate room at the edge of the highway where plaintiff's automobile might have been driven or pushed from the highway to a place of safety. It is further alleged that the defendants would call as a witness Paul Hursh, a resident of Reno, who investigated the accident and who took photographs of the scene thereof, and of the tracks upon the highway immediately after the happening of the accident; that Paul Hursh would testify that there was ample room at the edge of the highway for plaintiff's car to have been safely removed therefrom prior to the accident; that photographs so taken by Hursh would likewise show the location of the place of the accident and that plaintiff's car could have been driven or pushed to a place of safety. The affidavit further sets forth that the point where the accident happened was within Esmeralda County, and not within the same county where the town of Tonopah was located, and that it was questionable whether any court could authorize the jury to leave the county to view the scene of the accident, but that in any event the scene of the accident could be easily shown by photographs taken thereof. The affidavit further set out that it would be difficult for the defendants to secure a physician to go from Reno to Tonopah to testify in their behalf, and that none of the defendants' witnesses could be compelled by subpena to attend a trial in Tonopah; that one of plaintiff's counsel resided in Washoe County and all of defendants' counsel resided in Washoe County; that the costs of counsel attending the trial in Tonopah would probably exceed any expense that might be incurred by plaintiff in bringing witnesses to Reno; that living conditions were crowded in Tonopah because of the presence of military personnel and it was almost impossible for a civilian to secure rooms or other accommodations in Tonopah; that the case could not be tried more readily in Tonopah than in Washoe County for the reason that the judge of that district was required to hold court in Mineral County and

Esmeralda County. An affidavit for the purpose of rebuttal was made and filed by Peter Fabbi, plaintiff, and introduced at the hearing, in which it was alleged that one other physician besides plaintiff's doctor (the county physician in Goldfield and Tonopah) resided in Tonopah and that there were three military doctors at the camp of the army air base, six miles from Tonopah. The affidavit contains a travel schedule showing where Vasilovich might, by bus, be able to reach Tonopah from Oceanside in two days. It also set out that proper hotel accommodations could be secured at the Mizpah Hotel in Tonopah, by making a reservation for a reasonable time in advance, and that there were a number of smaller hotels in Tonopah where similar conditions prevailed; that causes may be tried in Nye County as soon as they are ready for trial, barring a delay of not to exceed a few days to a week when the judge of said court may be holding court in some other county in his district; that the district court at Tonopah is not crowded with cases, but on the contrary, cases may be tried as above stated without any delay. The foregoing is based upon information received by affiant from Lowell Daniels, who is district attorney of said county.

■ The statute which plaintiff invokes to change the place of trial, in its pertinent parts, reads:

"The court may, on motion, change the place of trial in the following cases: * * *

"3. When the convenience of the witnesses and the ends of justice would be promoted by the change. * * *" N. C. L. sec. 8572.

He contends that the above grounds were clearly established and that the court therefore erred in denying his motion. The general rule applicable under a statute like the above, is that an application for a change of venue is addressed to the "sound discretion of the court, and the exercise thereof, based on reason, and not arbitrary, will not be disturbed unless manifestly abused." 67 Corpus Juris, 159, n. 33, 34, 35.

The general rule was recognized by this court in Sheckles v. Sheckles, 3 Nev. 404, in which the court said: "The changing of the venue is a matter which rests *very much* in the discretion of the Judge at nisi prius, and we are *very loth* to interfere with his rulings. * * *"

And again in Williams v. Keller, 6 Nev. 141: "As a general rule, change of place of trial is *eminently* within the discretion of the Court to which the motion is addressed. * * *"

The emphasis is ours.

■ Defendants' right to have the action tried in Washoe County, of their residence, is absolute, sec. 8571, unless we are justified in reversing the order retaining it there because of a manifest abuse of discretion. What amounts to such abuse has been aptly defined in State ex rel. Merritt v. Superior Court for Kitsap County, 147 Wash. 690, 267 P. 503, 505: "When the evidence is clear, unconflicting in the essentials, and points unerringly to one result, to refuse to follow it is what the law denominates an abuse of discretion, such as justifies this court in taking cognizance of the matter."

We have examined the record carefully and find no such abuse.

■ There is a disparity in the number of witnesses to be produced by the parties in favor of plaintiff, it is true, six for plaintiff and three for defendants, but the trial court's discretion was not necessarily controlled by this fact. We say, three for defendants advisedly, for we think it was proper for the trial court to consider Vasilovich as a material witness, at least for his codefendants. Therefore we need not determine the question mooted whether the convenience of parties may be considered on a motion of this kind.

In Scott v. Stuart, 190 Cal. 526, 213 P. 947, 948, it was held: "A mere preponderance in number of the witnesses which either party expects to produce will not necessarily determine the order to be made."

Werner v. Bryden, 99 Cal. App. 398, 278 P. 869 is to the same effect. And the former court said: "It is no abuse of the trial court's discretion to deny a motion for a change of the place of trial made on the ground of the convenience of witnesses, if the affidavit of the defendant in opposition to the motion shows that his witnesses will be inconvenienced if the change be ordered."

■ Such is the situation here. It appears that inconvenience of witnesses will result in any event, and though the degree of inconvenience may be greater in the plaintiff's case, the matter was still within the sound discretion of the trial court. Plaintiff sought to obviate the inconvenience of the medical witness defendants might produce by suggesting they could get such a witness in the other doctor residing at Tonopah. We think the trial court could not have been impressed with the expediency of this proposition. The defendants being sued for the sum of $33,865, ought to be permitted to have a medical witness of their own choosing. The matter of hotel accommodations set forth in the affidavit we deem of little moment as bearing on the convenience of witnesses. The inconvenience of Dr. Craig was greatly stressed in that he had charge of the Tonopah Mines Hospital, which was usually full of patients and that it would be extremely difficult for him to leave Tonopah and come to Reno. It is obvious, however, that the inconvenience of defendants' medical witness would probably be as great in leaving his practice and going from Reno to Tonopah. We will not comment further on this phase of the case.

■ Two factors were to be considered by the trial court in passing on the motion, viz, the inconvenience of witnesses, and whether the ends of justice would be promoted by the change. The chance that the plaintiff might be deprived of the privilege of having the court or jury view the place where the accident happened in another county, but much nearer to Tonopah than

Washoe County, if a change is not had, was of no importance. The defendants would be subjected to the same risk. However, modern photography could easily supply such a view in the Washoe County court.

■ As to witnesses not being compelled to attend the trial outside of their own counties, this is also somewhat of a stalemate. Both sides would be susceptible to the hardship feared. However, in the event of an unwilling witness a deposition would at least alleviate the situation. The ends of justice would not be better subserved by a more speedy trial in Nye County than in Washoe County, for while the former county is one of three counties constituting the said Fifth judicial district with one judge for the district, Washoe County constitutes one district with two judges for the district.

■ In the matter of expense, it is alleged that plaintiff is a man of limited means and cannot afford to pay the expenses of his witness to go from Tonopah to Reno and return. We think the trial court was not required to consider this allegation on the question of the promotion of the ends of justice. If the allegation had been that plaintiff was destitute or poor the fact would have been material, as some of plaintiff's authorities indicate, but the statement "limited means" is susceptible of elastic meaning depending for quantity upon the individual viewpoint. It did not therefore supply the trial court with a substantial basis for a conclusion. Evidently the thought did not occur to plaintiff's attorneys when they stipulated that the action might be transferred from Esmeralda County to Washoe County. In passing, it might be noted that, notwithstanding plaintiff's limited means, he has been able to employ a prominent attorney of Nye County, and an eminent lawyer residing in Washoe County, to prosecute his action. There is no merit in the alleged insufficiency of defendants' affidavit. We are not prepared to say that any injustice was done in denying the motion for a change of venue.

The order is affirmed.