# IN THE SUPREME COURT OF THE STATE OF NEVADA

KIMBERLY JONES,
Appellant,
vs.
FLETCHER JONES, JR.,
Respondent.

No. 66632

**FILED**

JUL 14 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a final judgment entered, after a bench trial, on a complaint for declaratory judgment and specific performance regarding three marital agreements entered into by the parties. Eighth Judicial District Court, Clark County; Gayle Nathan, Judge.

Fletcher Jones, Jr. (Ted), and Kimberly Jones were married on July 4, 1998. Prior to their marriage, Ted and Kimberly signed a prenuptial agreement. During the course of Ted and Kimberly's separation and subsequent reconciliation, they signed two additional marital agreements: (1) a "Marital Settlement Agreement" (MSA), and (2) "Post Marital Agreement" (PMA).

Kimberly filed a petition for dissolution of marriage in California on January 4, 2012. On October 4, 2012, Ted filed a complaint for declaratory judgment and specific performance in Nevada to enforce the parties' agreements. As part of the agreements, it was provided that Ted would give a sum of money each year to Kimberly. The no-contest clause stated that as a condition precedent to bringing any challenge to the agreement appellant had to repay the annual payments that she received "together with" anything purchased or obtained with the money from those payments. Without any prepayment, Kimberly filed a motion to dismiss Ted's complaint in the Nevada action on October 30, 2012,

SUPREME COURT
OF
NEVADA

(O) 1947A

16-22041

alleging that the Nevada district court lacked jurisdiction because of the ongoing California divorce proceedings. The district court denied her motion and, after a bench trial, it entered a judgment finding that Kimberly violated the no-contest clause in the prenuptial agreement and awarded Ted specific performance and attorney fees.

Kimberly raises the following issues on appeal: (1) whether the district court erred by refusing to extend comity to the California court; (2) whether a no-contest clause in a prenuptial agreement is enforceable; (3) whether the language in the provision at issue actually calls for a condition precedent, as opposed to a forfeiture; (4) whether Kimberly actually violated the clause at issue; (5) whether the district court erred by admitting evidence related to Kimberly's credibility; (6) whether the district court erred by granting Ted a cash award and real property; and (7) whether the district court erred by awarding Ted attorney fees.

*The district court did not err by refusing to extend comity to the California court*

The doctrine of comity "is a principle of courtesy by which the courts of one jurisdiction may give effect to the laws and judicial decisions of another jurisdiction out of deference and respect." *Gonzales–Alpizar v. Griffith*, 130 Nev., Adv. Op. 2, 317 P.3d 820, 826 (2014) (internal quotations omitted). "[Comity] is appropriately invoked according to the sound discretion of the [trial] court." *Mianecki v. Second Judicial Dist. Court*, 99 Nev. 93, 98, 658 P.2d 422, 425 (1983).

Here, the district court in Nevada had ample reasons for refusing to grant comity to the California proceedings. For example, Kimberly filed a writ petition with this court contending that the district court should have dismissed Ted's complaint in light of the proceedings in

California. *Jones v. Eighth Judicial Dist. Court*, Docket No. 62614 (Order Denying Petition for Writ of Mandamus or Prohibition, July 24, 2013). This court denied Kimberly's request for relief, holding that "[i]t is not clear . . . that the issues presented in the [Nevada] declaratory relief action may be adjudicated in the California case." *Id.* This court further stated that "nothing in the record [reflected] that the California court considered or made findings as to . . . whether it . . . would adjudicate the validity of the marital [contracts]." *Id.* The district court expressed similar concerns regarding whether the California court would adjudicate the issues relating to the agreements, noting that Ted ran the risk of the California courts sending him back to Nevada.

The district court's statements indicate that it weighed the likelihood that California would reach the issue of validity and, in its discretion, refused to extend comity to the California courts on this issue. Furthermore, on May 9, 2016, this court granted Ted's motion seeking judicial notice of the following decisions in the California litigation: (1) the parties' marital dissolution judgment; (2) the final statement of decision following trial; and (3) an April 5, 2015, order granting full faith and credit to the Nevada district court on the issues of validity and enforceability of the marital contracts. These documents all show that the California court actually deferred to the Nevada courts on the issues raised in Kimberly's appeal. Therefore, the Nevada district court did not err by refusing to extend comity to the California court.

*A no-contest clause in a prenuptial agreement is enforceable*

This court reviews the validity of a prenuptial agreement de novo. NRS 123A.080(3); *Sogg v. Nevada State Bank*, 108 Nev. 308, 312, 832 P.2d 781, 783 (1992).

*NRS Chapter 123A*

Prenuptial agreements are governed by the Uniform Premarital Agreement Act (UPAA), codified at NRS 123A.010. Parties under the UPAA may contract with respect to "[a]ny . . . matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty." NRS 123A.050(1)(h). Furthermore, a prenuptial agreement is enforceable so long as it was executed voluntarily and was not unconscionable when executed.[1] NRS 123A.080.

*The no-contest clause in Ted and Kimberly's prenuptial agreement does not violate public policy*

Although "there is a strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements," equally strong public policy considerations have been used to render premarital agreements partially or wholly unenforceable. *Bloomfield v. Bloomfield*, 764 N.E.2d 950, 952 (N.Y. 2001) (internal quotations omitted).

Additionally,

[c]ourts in many states have held that considerations of public policy limit the permissible scope of a premarital agreement. For example, states have an overriding interest in protecting the welfare of children. Therefore, courts have held that a premarital agreement's waiver of child support, custody or visitation is unenforceable. States also have an interest in protecting the economic welfare of their adult residents. Therefore, some states treat premarital

---

[1]Kimberly does not dispute that the prenuptial agreement was entered into voluntarily or that financial disclosures were an issue.

provisions that waive or limit spousal support as violative of public policy and unenforceable.

Gail Frommer Brod, *Premarital Agreements and Gender Justice*, 6 Yale J.L. & Feminism 229, 254-55 (1994) (footnotes omitted).

Here, none of the public policy concerns regarding spousal support or child-related issues are involved. In fact, the no-contest clause expressly states that "[a]ny claim for alimony, spousal support or relating to the custody or support of children shall not be deemed an act which triggers the provisions of this paragraph." Furthermore, the record reflects that the prenuptial agreement would not adversely affect Kimberly's economic welfare. Paragraph IV(G) of the prenuptial agreement states:

> While the parties remain married and are residing together in the same residence, Ted will pay the reasonable expenses for the general health, maintenance, recreation, support and welfare of the parties. . . . Each month the parties reside together after marriage, Ted will make available for Kimberly's exclusive use, cash and/or credit in the sum of $5,000.00 per month, for Kimberly to utilize for her personal expenses. There shall be cost of living adjustments to said amount every three years.

The district court found that Ted complied with this paragraph until the parties' divorce proceedings in 2005, paying all living expenses of the parties and even increasing the monthly amount available to Kimberly for her personal use from $5,000 to $10,000. Therefore, the prenuptial agreement did not limit spousal support, and thus, did not affect Kimberly's economic welfare to the extent that it would render the prenuptial agreement unenforceable as against public policy.

*The no-contest clause in Ted and Kimberly's prenuptial agreement was not unconscionable when executed*

"A contract is unconscionable only when the clauses of that contract and the circumstances existing at the time of the execution of the contract are so one-sided as to oppress or unfairly surprise an innocent party." *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.*, 89 Nev. 414, 418, 514 P.2d 654, 657 (1973).

Here, the clauses of the agreement and the circumstances existing at the time of the execution of the contract were not so one-sided as to either oppress or unfairly surprise Kimberly. Kimberly was independently represented and understood the legal significance of the agreement. She also signed the agreement freely and voluntarily. Furthermore, proposed changes to the prenuptial agreement were discussed between Kimberly's and Ted's attorneys, with "Ted agree[ing] to every material change proposed by Kimberly to the prenuptial agreement." Lastly, the validity of the prenuptial agreement was restated twice during Kimberly and Ted's marriage, once when they ratified the MSA and again when they ratified the PMA. Therefore, the agreement was not so one-sided as to unfairly surprise Kimberly.[2] Additionally, the terms of the prenuptial agreement were not so one-sided as to oppress her

---

[2]Kimberly argues that the no-contest clause is void because it only punishes her. However, Kimberly fails to view the clause in the context of the entire agreements. Ted was under an ongoing obligation to pay Kimberly funds during their marriage and, as the record reflects, is currently under an obligation to pay Kimberly a substantial amount per month for spousal support. This is in addition to the child support that she receives. Therefore, we hold that the no-contest clause is neither one-sided nor unfairly punishes Kimberly.

in an unconscionable manner. We thus hold that the agreement was not unconscionable.

*The language in the provision at issue calls for a condition precedent*

"Contract interpretation is subject to a de novo standard of review." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). If contract language is clear, it will be enforced as written. *Buzz Stew, LLC v. City of N. Las Vegas*, 131 Nev., Adv. Op. 1, 341 P.3d 646, 650 (2015).

The no-contest clause states:

> In the event Kimberly seeks in any way to set aside, impair or invalidate any of the provisions of this Agreement, directly or indirectly, as a condition precedent to the right to bring or maintain such action(s), the amounts previously paid to her or for her benefit under the terms of Paragraph II(B)(9) [an annual sum of $250,000] of this Agreement shall be forfeited and repaid to Ted, together with all income or accumulations thereto or assets acquired therewith, and all future amounts otherwise payable under Paragraph II(B)(9) shall no longer be payable, and Ted's obligations under said Paragraph shall terminate. Any claim for alimony, spousal support or relating to the custody or support of children shall not be deemed an act which triggers the provisions of this paragraph.

In its decision, the district court found that the term "condition precedent" did not restrict Ted's methods for claiming breach. Instead, the district court found the term was used to specify the actions that Kimberly needed to take before challenging the agreements. Because she failed to take these actions, the district court found that Kimberly breached the no-contest clause.

We agree. From the plain language of the provision, it is clear that the term "condition precedent" was used to specify that Kimberly must make the reimbursement prior to any challenge to the parties' agreements. By taking these prohibited actions prior to making the payments, Kimberly failed to comply with the agreement, thereby breaching it. Therefore, Ted is entitled to repayment pursuant to the agreed upon terms of the provision.[3]

*Kimberly violated the clause at issue*

While a party's conduct is a question of fact, whether said conduct violates a no-contest clause is a legal question reviewed de novo. *See Redman-Tafoya v. Armijo*, 126 P.3d 1200, 1210 (N.M. Ct. App. 2005); *see also In re Estate of Davies*, 26 Cal. Rptr. 3d 239, 246 (Ct. App. 2005). Additionally, "[f]orfeiture provisions are strictly construed." *Am. Fire & Safety, Inc. v. City of N. Las Vegas*, 109 Nev. 357, 360, 849 P.2d 352, 355 (1993).

The language in the no-contest provision uses the term of art to "bring or maintain" an action, which means "the initiation of legal proceedings in a suit." *Harris v. Garner*, 216 F.3d 970, 973 (11th Cir. 2000) (citing *Black's Law Dictionary* 192 (6th ed. 1990)). As a forfeiture clause is to be strictly construed, the term "action" therefore refers to a legal action.

---

[3]Kimberly makes the additional argument that the involuntary forfeiture of benefits is a void form of liquidated damages. Because Kimberly raises this issue for the first time on appeal, it has been waived. *Old Aztec Mine v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (issues may not be raised for the first time on appeal).

Under a plain reading of the language of the no-contest clause, it is clear that Kimberly breached the no-contest clause. First, Kimberly's own attorneys conceded that the California litigation sought to attack the validity of the agreements. Second, Kimberly's August 2012 responses to requests for admission clearly constituted an attempt to set aside, impair, or invalidate provisions of the prenuptial agreement. Lastly, Kimberly's answer to Ted's complaint included affirmative defenses that demonstrated an intent to set aside the agreements. Because an answer is considered a pleading in a court action, NRCP 7(a), we hold that the affirmative defenses alleged in Kimberly's answer, in addition to statements made by Kimberly's counsel, constitute a breach of the plain language of the no-contest clause.[4]

*The district court did not abuse its discretion by admitting evidence related to Kimberly's credibility*

A district court's evidentiary rulings are reviewed for abuse of discretion. *FGA, Inc. v. Giglio*, 128 Nev. 271, 283, 278 P.3d 490, 497 (2012). If the correct ruling is clear, however, refusing to follow it is an abuse of discretion. *Fabbi v. First Nat'l Bank of Nev.*, 62 Nev. 405, 414, 153 P.2d 122, 125 (1944).

---

[4]Kimberly argues that even if her affirmative defenses had prevailed, that would not have invalidated the agreements. This argument lacks merit. Kimberly's answer denied the validity and enforceability of the agreement, as well as raised allegations such as lack of consideration, adhesion, invalidity, mutual mistake, and that the prenuptial agreement was the result of "Ted's misrepresentations, concealment, circumvention and unfair practices." Had Kimberly prevailed on any of these affirmative defenses, all the agreements would have likely been invalidated and deemed unenforceable.

*The district court did not abuse its discretion*

Evidence that is not relevant is not admissible. NRS 48.025. A spouse's credibility is relevant to the issue of validity of prenuptial agreements. *See In re Marriage of Shanks*, 758 N.W.2d 506, 513 (Iowa 2008) (finding the wife's testimony regarding validity of the prenuptial agreement as not credible).

Here, the district court admitted testimony related to Kimberly's claim that the no-contest clause was illegal, that Ted had waived his rights under the clause, that the clause was not equitable, that Kimberly felt pressured and unduly influenced by the proximity of the wedding to sign the prenuptial agreement, that she had not read the prenuptial agreement, and that she never negotiated a forum-selection clause.

Therefore, Kimberly's testimony was relevant as to whether she had breached the no-contest clause, whether the clause was valid, whether Ted was entitled to specific performance, and whether Ted breached provisions of the agreements. Additionally, this court, in denying Kimberly's writ petition, stated: "To the extent that [Kimberly] contends the agreements were not freely negotiated and were unreasonable, these are fact questions that should be determined by the district court after the evidentiary hearing as to the validity of the agreements." *Jones v. Eighth Judicial Dist. Court*, Docket No. 62614 (Order Denying Petition for Writ of Mandamus or Prohibition, July 24, 2013).

Accordingly, because her testimony was relevant on these issues, her credibility was therefore an issue. *See* NRS 50.075 ("The credibility of a witness may be attacked by any party . . . ."). Therefore, we

hold that the district court did not abuse its discretion by admitting evidence related to Kimberly's credibility.[5]

*The district court did not abuse its discretion by granting Ted an award of damages plus specific performance*

An award of damages following a bench trial is reviewed for an abuse of discretion. *Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 111 Nev. 799, 802, 898 P.2d 699, 701 (1995).

The no-contest clause, if triggered, explicitly mandates that Kimberly repay the annual sum of $250,000 paid to her by Ted, "together with all income or accumulations thereto or assets acquired therewith." As stated earlier, this provision was negotiated at length by both parties and both parties were represented by counsel.

Based on the language in the no-contest clause, the district court awarded Ted a cash award of $1.75 million—comprised of the annual $250,000 sum paid to Kimberly by Ted from 1999-2005—along with an award of real properties—consisting of three properties that Kimberly had acquired with the annual $250,000 sum. The district court found that

> Kimberly has breached the parties' Prenuptial Agreement contract and Ted is entitled to specific performance. Such remedy is appropriate here,

---

[5]Kimberly also argues that the district court "should not have permitted Kimberly's former attorney, Kathryn Stryker Wirth, to lead the impeachment effort against Kimberly by relying on privileged notes." However, the district court ruled that there was an attorney-client privilege and properly redacted the documents. *See In re Grand Jury Proceedings*, 689 F.2d 1351, 1352 (11th Cir. 1982). Kimberly fails to identify any specific testimony by Wirth that disclosed privileged communications impacting the trial or any part of the district court's findings and conclusions in which the district court improperly relied on privileged testimony from Wirth.

since the breach of contract involves real property, and the remedy at law is inadequate. Real property is so unique that money damages will not suffice to make a party whole.

We hold that the district court correctly found that Kimberly must repay Ted the annual sums that she received from him, together with the properties she acquired therewith. Because the no-contest clause is explicit in its terms, it will therefore be enforced as written.[6] *Buzz Stew*, 131 Nev., Adv. Op. 1, 341 P.3d at 650.

*The district court did not abuse its discretion by awarding Ted attorney fees*

"[A] district court's award of attorney[] fees will not be overturned absent a manifest abuse of discretion." *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 452, 956 P.2d 1382, 1389 (1998). In awarding attorney fees, the district court must state its basis for the amount. *Henry Prods., Inc. v. Tarmu*, 114 Nev. 1017, 1020, 967 P.2d 444, 446 (1998). The district

---

[6]Kimberly makes the additional arguments that (1) the real properties could not be forfeited because they were an independent award under the MSA, and (2) the district court had no jurisdiction to compel nonparties to disgorge the real properties, as the properties were owned by rental management companies organized as LLCs owned by Kimberly. We hold that these arguments lack merit. Although Ted may have released his rights to the properties at issue pursuant to the MSA, nothing in the MSA indicates that Ted waived any future interest in the properties. *Clark v. Columbia/HCA Info. Servs., Inc.*, 117 Nev. 468, 480, 25 P.3d 215, 223-24 (2001) ("Contractual release terms are only enforceable against claims contemplated at the time of the signing of the release and do not apply to future causes of action unless expressly contracted for by the parties."). Therefore, the terms of the MSA did not prevent Ted from accruing an interest in the properties upon Kimberly's breach of paragraph XII. Furthermore, Kimberly withdrew the affirmative defense of non-joinder of parties at trial. Therefore, we hold that she waived this issue and we need not address it.

court must also demonstrate that the costs awarded were actually incurred and reasonable. *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev., Adv. Op. 15, 345 P.3d 1049, 1054 (2015).

In the present case, the district court provided the bases for its award. Its order stated that it based its attorney fee award on the agreements and EDCR 7.60. Furthermore, the record in this case bolsters Ted's argument that the attorney fees in the current action were reasonable and actually incurred. Accordingly, the district court did not abuse its discretion in awarding attorney fees to Ted.

Therefore, we

ORDER the judgment of the district court AFFIRMED.[7]

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

---

[7]The Honorable Ron D. Parraguirre, Chief Justice, voluntarily recused himself from participation in the decision of this matter.

SUPREME COURT OF NEVADA

(O) 1947A

cc: Hon. Gayle Nathan, District Judge
Lewis Roca Rothgerber Christie LLP/Las Vegas
Kolodny Law Group
Black & LoBello
Wasser, Cooperman & Carter
The Jimmerson Law Firm, P.C
Seastrom & Seastrom
Lemons, Grundy & Eisenberg
Eighth District Court Clerk